**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Jose Alfredo PALLARES–GALAN,
Defendant–Appellant.**

No. 02–10532.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 2003.

Filed Feb. 20, 2004.

Franny A. Forsman, Federal Public Defender, Jason F. Carr, Assistant Federal Public Defender, Las Vegas, Nevada, for the appellant.

Robert Bork, Assistant United States Attorney, Las Vegas, Nevada, for the appellee.

Before REINHARDT, SILER,* and HAWKINS, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge:

Pallares–Galan appeals from a judgment of conviction following a conditional plea of guilty to one count of unlawful reentry of a deported alien, a violation of 8 U.S.C. § ·1326. We are required to decide whether a California Annoying or Molesting ·a Child Under 18 misdemeanor conviction, Cal. Pen.Code § 647.6(a), constitutes an aggravated felony conviction, specifically, "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A), for purposes of deportation law, *see* 8 U.S.C. § 1227(a)(2)(A)(iii). We hold that it does not, and consequently, that Pallares was eligible for discretionary relief from deportation in the form of cancellation of removal (8 U.S.C. § 1229b). Because the Immigration Judge erroneously advised Pallares that he was not eligible, and because Pallares' waiver of his right to appeal the removal order was not "considered and intelligent" for that and other reasons, we conclude that his claim is not barred by the exhaustion requirement of 8 U.S.C. § 1326(d)(1), and further, that the underlying deportation order was procedurally defective. We REVERSE and REMAND with directions to the district court to consider whether Pallares suffered prejudice as a result, and, accordingly, whether the indictment should be dismissed.

## I. BACKGROUND

Mexican national Jose Alfredo Pallares–Galan became a Lawful Permanent Resident· on December 1, 1989. In January 1997, he pled no contest in the Municipal Court to the charge of Inflicting Corporal Injury Upon a Spouse, a misdemeanor vio-

---

* The Honorable Eugene E. Siler, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

lation under California Penal Code § 273.5(a). In July 1999, Pallares was charged before the Municipal Court with one count of Annoying or Molesting a Child Under 18, in violation of California Penal Code § 647.6(a), and three counts of Indecent Exposure, in violation of California Penal Code § 314(1).[1] The four misdemeanor offenses were alleged to have occurred on the same day, and appear, from the limited description in the state criminal complaint, to have arisen from a single incident. Initially, Pallares pled not guilty to all four offenses. Thereafter, he moved to withdraw his plea of not guilty to the first count and instead entered a plea of no contest to the charge of Annoying or Molesting a Child Under 18 in exchange for the dismissal of the three counts of Indecent Exposure. He was sentenced to 36 months summary probation with the condition that he serve 180 days in the county jail.

On November 3, 1999, the INS served Pallares with a Notice To Appear alleging that he was subject to removal from the United States due to the 1997 Corporal Injury misdemeanor conviction, which was stated as the sole ground for removal under 8 U.S.C. § 1227(a)(2)(E)(i). At the December 1999 hearing, the Immigration Judge ("IJ") found that the charge of removal was sustained and informed Pallares that he might be eligible for discretionary relief from deportation in the form of cancellation of removal (8 U.S.C. § 1229b).[2] Pallares prepared an application for cancellation of removal which lists his employment history, states that he filed an income tax return between 1986 and 1998 and reports that he has never received public assistance. The application also states that Pallares' wife, a Mexican national and legal permanent resident, resides in California and is employed as a teacher's aide, and that the couple has two children.

On December 27, 1999, the government served Pallares with Additional Charges of Inadmissibility/Deportability based on the 1999 Annoy/Molest conviction. Subsequently, on January 5, 2000, the government moved to pretermit Pallares' application for cancellation of removal. The final removal hearing occurred two days later, on January 7, 2000. At that hearing, the IJ questioned Pallares about the 1999 conviction for Annoying or Molesting a Child Under 18, and Pallares responded:

> I have never touched anyone in my life. I've never touched anyone. Not even in my mind have I had any intention of harming anyone because I have children myself.

Thereafter, the IJ asked whether he had nevertheless pled guilty. Pallares replied:

> It's correct, uh, I heard the charge and I knew it wasn't so bad in my heart that I

---

1. Count One of the Complaint charged:
 On or about July 12, 1999, in the County of Los Angeles, the crime of CHILD MOLESTING, in violation of PENAL CODE § 646.6(a), a Misdemeanor, was committed by ALFREDO PALLARES, who did unlawfully annoy and molest a child, KATIE B., under the age of eighteen years.
 Counts 2–4 of the Complaint each charged:
 On or about July 12, 1999, in the County of Los Angeles, the crime of INDECENT EXPOSURE, in violation of PENAL CODE § 314(1), a Misdemeanor, was committed by ALFREDO PALLARES, who did unlawfully and lewdly expose his/her person, and the private parts thereof, in a public place, and in a place where there were present other persons to be offended and annoyed thereby[.]

2. Under IIRIRA, Congress eliminated suspension of deportation, INA § 212(c), and replaced it with "cancellation of removal," INA § 240A; 8 U.S.C. § 1229b, which retained the same standards for relief. *See Pablo v. INS,* 72 F.3d 110, 113 (9th Cir.1995) (listing the factors considered in granting discretionary relief under Section 212(c) of the former INA).

accepted it. The other two charges I was threatened and I have not hurt anyone.

The IJ then proceeded to declare that the Annoy/Molest misdemeanor conviction qualified as an "aggravated felony" for deportation purposes:

The BIA in a decision of a case here in Florence, determined that the conviction for that in California is an aggravated felony because it involves the sexual abuse of a minor. Now that's not, as far as I know, that's not a precedent decision, but it's a decision which came out of the immigration court in Florence ... U ... so my decision ... U ... this additional charge has been sustained. You have been convicted of an aggravated felony. What that means sir is that I cannot consider your application for cancellation of removal, because cancellation of removal requires that a person not be convicted of an aggravated felony. So my decision would be that you are not eligible for cancellation. I don't see that you are eligible for any other relief to stay in the United States. So my decision is that you ... U ... be removed from the United States ...

Finally, after completing her statement of decision, the judge engaged Pallares in a tangled exchange regarding his right to appeal:

IJ: ... *Do you want to appeal my decision?*

Respondent: How long might it take me to appeal my decision?

IJ: I can't tell you exactly how long the appellate court will take. But judging from the past, I would say it would take six to eight months for the appellate court to make a decision.

Respondent: I swear to you for God that I haven't done anything. And if your honor would give me the opportunity to leave OR I would fight this for my children who need me.

IJ: Sir, I can't ... give you OR to leave ... so, *it's up to you, if you want to appeal my decision, you can appeal. I'll give you the papers necessary to file your appeal.* ...

Respondent: *It would be better if I leave my children, that's fine.*

IJ: *U.. this is the final order, thank you.*

(emphasis added). Pursuant to this exchange, the IJ ordered Pallares removed, indicating in the order that he had "waived" his right to appeal.

Sometime after January 7, 2000, Pallares re-entered the United States. In July 2001, he was arrested by the Las Vegas Police Department, and the following month he was indicted under 8 U.S.C. § 1326 for unlawful re-entry into the United States and placed in federal custody.

Pallares filed a Motion to Dismiss Based on a Prior Unlawful Deportation in the District Court for the District of Nevada, arguing that a due process defect in the underlying deportation proceeding foreclosed proper judicial review of his case, and therefore, that the deportation order could not be used as an element of his illegal reentry offense. At a February 2002 hearing on the motion to dismiss, the district court expressed concern about whether the Annoy/Molest misdemeanor conviction could properly be characterized as an aggravated felony, "sexual abuse of a minor" under § 1101(a)(43)(A), identifying this question as the issue upon which Pallares' collateral attack would rise or fall.[3]

---

**3.** The court: It seems to be [the government's] position that regardless of all of these other things that the young minor is an aggra-

vated felony, then the other issues in connection with the 212(c) relief are moot.

Government: It is, your Honor.

In response, Pallares' attorney suggested that the court's concern constituted a "compelling" reason for supplemental briefing on this question, explaining that Pallares' brief would address the "categorical approach and whether [the state conviction] is ... really an aggravated felony" and, further, that his argument "would be that the [state] statute is overbroad." The court assented, ordering supplemental briefing on the question.

In his supplemental brief, Pallares advanced an alternative argument to support his claim that the state Annoy/Molest conviction did not count as an aggravated felony for deportation purposes. Asserting that the district court need not reach the *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), categorical analysis issue, Pallares instead argued that the plain language of the federal statutory provision—and particularly the word "felony"—was dispositive of the question presented.[4] The government contested Pallares' argument on the plain language point and further asserted that under the *Taylor* categorical approach, the full range of conduct under the Annoy/Molest statute did, in fact, fall within the aggravated felony of "sexual abuse of a minor." After receiving the parties' briefs,

the court issued an order denying Pallares' Motion to Dismiss.

In June 2002, Pallares entered a conditional plea of guilty to the § 1326 charge, preserving for appeal the district court's denial of his Motion to Dismiss. He was sentenced to 24 months' incarceration to be followed by two years of supervised release. Pallares now appeals the denial of his motion.

## II. STANDARD OF REVIEW

■ We review a denial of a motion to dismiss an 8 U.S.C. § 1326 indictment de novo when the motion is based upon an alleged due process defect in the underlying deportation proceeding. *U.S. v. Muro–Inclan,* 249 F.3d 1180, 1182 (9th Cir.2001).

■ Here, however, the government argues that the standard of review should be plain error because Pallares did not urge in the district court the particular argument presented on appeal—and, in fact, expressly advised the district judge that it was not necessary to reach it: namely, the argument that offenses under the state Annoy/Molest statute do not qualify as aggravated felonies under the

---

The court: Here's my concern. I get from my own experience with the young minor charges ... and quite often they are a catchall for things that are what I don't think would be considered an aggravated felony because even though it is a form of abuse of minors, sometimes the charges result from someone, for example, urinating in a public place and a child happens to see him, and the charges are brought ...

And so without the arrest report from California to see exactly what the circumstances were, I can't tell. I can only surmise from looking at the other Counts that he pled [not] guilty to, which were indecent exposure, and so I have to assume that again that's another thing that could have been related to someone drunk and urinating in public and not really what we would

call an aggravated felony for the purposes of deportation.

4. Pallares argued that misdemeanor offenses cannot constitute aggravated felonies:

In this case, legislative history makes clear that "sexual abuse of a minor" must be a felony for it to qualify as an aggravated felony. As a result, since the legislative history provides for this Court the way in which it must interpret the statute, this Court does not need to reach the *Taylor* analysis.

We subsequently determined that, contrary to Pallares' argument, state misdemeanor offenses may constitute "aggravated felonies." *See, e.g., U.S. v. Corona–Sanchez,* 291 F.3d 1201, 1210 (9th Cir.2002) (en banc).

*Taylor* categorical approach. We reject the government's contention because Pallares' argument is not a new claim; rather, it constitutes an alternative argument to support what has been his consistent claim from the beginning: that his state Annoy/Molest conviction cannot qualify as an aggravated felony for deportation purposes. As the Supreme Court has made clear, it is claims that are deemed waived or forfeited, not arguments. In *Lebron v. Nat'l Railroad Passenger Corp.*, the Court held that an argument that petitioner expressly disavowed before the lower courts, and did not raise until after certiorari was granted, was not waived and should be addressed in the normal course. 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995). The Court reasoned: "Lebron's contention that Amtrak is part of the Government is in our view not a new claim within the meaning of that rule, but a new argument to support what has been his consistent claim: that Amtrak did not accord him the rights it was obligated to provide[.]" *Id.* at 378–79, 115 S.Ct. 961; *see also Yee v. Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").

Moreover, plain error review typically applies where an issue raised on appeal was *not* "brought to the [district] court's attention." *See* Fed. R.Crim. Proc. 52(b). Here, not only did Pallares present the same underlying *claim* raised before this court in the briefs filed below, but he even urged in open court the very *Taylor argument* he now advances on appeal in support of his claim; in fact, Pallares initially told the district court that he planned to advance the *Taylor* argument in his supplemental brief, although he subsequently opted to rely on a different theory that, if successful, would have avoided the necessity to reach that argument. Accordingly, we do not review Pallares' claim under the plain error standard; instead, we apply the customary de novo standard.

## III. DISCUSSION

■ Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause. *U.S. v. Mendoza–Lopez*, 481 U.S. 828, 837–38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Under the controlling statutory provisions, in order to sustain his collateral attack, a defendant must show first, that he "exhausted any administrative remedies that may have been available to seek relief against the order;" second, that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review;" and third, that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). An underlying removal order is "fundamentally unfair" if (1) an alien's "due process rights were violated by defects in the underlying deportation proceeding," and (2) "he suffered prejudice as a result of the defects." *U.S. v. Garcia–Martinez*, 228 F.3d 956, 960 (9th Cir.2000) (citation omitted).

### A. ·Exhaustion of Administrative Remedies & Deprivation of Judicial Review

#### 1. Waiver of the Right of Appeal Must Be "Considered and Intelligent"

The government argues that Pallares is barred from collaterally attacking the lawfulness of his underlying deportation because he failed to exhaust his administrative and judicial remedies. Pallares responds that he did not have a meaningful opportunity to exhaust them.

■ "In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *U.S. v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000) (citation omitted). An alien is barred under 8 U.S.C. § 1326(d)(1) from collaterally attacking his underlying removal order "if he validly waived the right to appeal that order during the deportation proceedings." *U.S. v. Muro–Inclan*, 249 F.3d 1180, 1182 (9th Cir.2001). However, where a waiver of the right to appeal a removal order is not "considered and intelligent," an alien has been deprived of his right to that appeal and thus to a meaningful opportunity for judicial review. *See United States v. Leon–Paz*, 340 F.3d 1003, 1005 (9th Cir.2003). Effective deprivation of an alien's administrative appeal serves to deprive him of the opportunity for judicial review as well. *Mendoza–Lopez*, 481 U.S. at 840, 107 S.Ct. 2148 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding.").

■ Here, Pallares' waiver of his right to appeal his removal order was not "considered and intelligent" because the IJ erroneously informed him that he was not eligible for relief from deportation on account of his 1999 state misdemeanor Annoy/ Molest conviction, Cal.Penal Code § 647.6(a). Where " 'the record contains an inference that the petitioner is eligible for relief from deportation,' " but the IJ fails to " 'advise the alien of this possibility and give him the opportunity to develop the issue,' " we do not consider an alien's waiver of his right to appeal his deportation order to be " 'considered and intelligent.' " *Muro–Inclan*, 249 F.3d at 1182 (citation omitted). For example, in *Leon–Paz*, after the IJ erroneously advised the alien that he was not eligible for relief under § 212(c) of the former INA, the

alien expressly declined to appeal the IJ's order of removal. 340 F.3d at 1004, 1007. We held that the alien's due process rights had nevertheless been violated because of the IJ's erroneous advice. *See id.* at 1007. Specifically, *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), which was issued after the IJ's *Leon–Paz* ruling, adopted a rule which made it clear that Leon Paz had, indeed, been eligible for relief at the time of his 1997 hearing. *Id.* at 1006. We then decided that the IJ's pre-*St. Cyr* advice to the contrary had "deprived petitioner of judicial review in violation of due process," and that petitioner's waiver of his right to appeal the IJ's decision had not been "considered and intelligent." *Id.* at 1004–07.

■ Similarly, here, Pallares was eligible for relief from deportation under the successor provision to § 212(c), as we discuss more fully *infra* at Part A(2), but the IJ erroneously advised him to the contrary. She believed, incorrectly, that the conviction under the state Annoy/Molest misdemeanor statute, Cal.Penal Code § 647.6(a), constituted a conviction of the aggravated felony of "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A), for purposes of deportation law. Because the IJ erred when she told Pallares that no relief was available, Pallares' failure to exhaust his administrative remedies cannot bar collateral review of his deportation proceeding. *See Muro–Inclan*, 249 F.3d at 1183–84. For the same reason, Pallares' waiver of his right to appeal was not "considered and intelligent" and "deprived [him] of his right to judicial review" under § 1326(d)(2). *See Leon–Paz*, 340 F.3d at 1005 (citation omitted).

■ Moreover, there is an additional, independent reason why Pallares is excused from meeting the exhaustion requirement of § 1326(d)(1): the colloquy between the IJ and Pallares at the time an

appeal was discussed reveals that, even aside from the erroneous advice given Pallares by the IJ, Pallares' waiver of his right to appeal was not "considered and intelligent." *See, e.g., U.S. v. Zarate–Martinez,* 133 F.3d 1194, 1198 (9th Cir.1998) (holding that immigration judge's individual conversation with petitioner, in which the judge asked simply, "do you understand your rights?" and petitioner responded "yes," did not "qualify as an express or implied 'voluntary and intelligent' waiver" of right to appeal).[5] For a waiver to be valid, the government must establish by "clear and convincing evidence," *Gete v. INS,* 121 F.3d 1285, 1293 (9th Cir.1997), that the waiver is "considered and intelligent." *U.S. v. Lopez–Vasquez,* 1 F.3d 751, 753–54 (9th Cir.1993)(en banc); *see also U.S. v. Gonzalez–Mendoza,* 985 F.2d 1014, 1017 (9th Cir.1993)(finding a due process violation where immigration judge failed to inquire whether right to appeal was knowingly and voluntarily waived).

In several cases, courts have concluded that an IJ's failure to explore the issue adequately with the petitioner precluded a purported waiver from being "considered and intelligent." In *Mendoza–Lopez,* for example, the Supreme Court determined that a waiver was not "considered and intelligent" where aliens were not represented by legal counsel at the hearing and were not adequately advised of the consequences of the choices they were forced to make:

> Both defendants had been continuously present in the United States for a period exceeding seven years at the time of the deportation hearing. They were therefore eligible for suspension of deportation. The IJ did not adequately inform the defendants about this alternative relief, as is required by 8 C.F.R. 242.17(2). The defendants did not understand the

consequences of the choices they were forced to make[.]

781 F.2d 111, 113 (8th Cir.1985), *aff'd by,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ("The IJ permitted waivers of the right to appeal that were not the result of considered judgments by the respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation.").

Similarly, in *U.S. v. Lopez–Vasquez,* 1 F.3d 751, 753 (9th Cir.1993)(en banc), this court found that an alien's waiver cannot be "considered and intelligent" even though the IJ thoroughly explained the right to appeal at a group hearing because, in addressing the group as a whole through an interpreter, the IJ failed to solicit separate responses from each individual facing removal. The Court made it plain that the fact that petitioner "knew what an appeal was" was insufficient. It also noted that the IJ's actions may have conveyed the message that the petitions would not benefit from an appeal. *Id.* at 754.

Here, the government has failed to provide "clear and convincing" evidence to establish Pallares' "intentional relinquishment" of the right to appeal. Like the respondent in *Mendoza–Lopez,* Pallares was unrepresented by counsel; he also relied on an interpreter to understand the proceedings. In this context, the IJ's brief explanation regarding Pallares' right to appeal fell far short of the detailed description offered in *Lopez–Vasquez* (which was found nevertheless to be insufficient in light of the circumstances).

Even more important, the exchange raises some of the same concerns that prompted this Court, in *Lopez–Vasquez,* to determine that, despite the IJ's specific,

---

**5.** We recognized the implicit overruling of *Zarate–Martinez* on other grounds in *U.S. v.* *Ballesteros–Ruiz,* 319 F.3d 1101, 1105 (9th Cir.2003).

and thorough explanation of his rights, petitioner's waiver could not be deemed "considered and intelligent." Although it appears that Pallares "knew what an appeal was," the record strongly suggests that his decision not to invoke that right was not "considered and intelligent"—and it is that latter element that, under *Lopez–Vasquez*, determines whether Pallares' failure to appeal is fatal to his claim. Indeed, in contrast to the cases in which waivers have been found to be considered and intelligent, Pallares did not at any time respond in the affirmative regarding his wish to forego an appeal. Instead, Pallares' reply—"It would be better if I leave my children, that's fine"—conveys significant confusion about what the appeals process would have entailed, and what the competing consequences of appeal and waiver might have meant for him and his family in practical terms. Further, the IJ's failure to follow-up after Pallares' cryptic statement—like the IJ's comments in *Lopez–Vasquez*—"may have conveyed the message that [Pallares] should accept [his] deportation and not appeal," despite his evident desire to vindicate his rights. Finally, as evidenced by the exchange, the driving force behind Pallares' plaintiff reply—"if your honor would give me the opportunity to leave OR I would fight this for my children who need me"—was the fact of his detention and the effect of that detention upon his family. In this context, the IJ's failure to offer him even a few moments to *actually* "consider" his right to appeal, not to mention time to consult an attorney, supports our conclusion that we cannot fairly deem Pallares' waiver "considered" or "intelligent." Given all the circumstances, we are not free to "presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel. Co. v. Public Utils. Comm'n*, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1936); instead we conclude that Pallares' statements do not qualify as a "considered and intelligent" waiver of his right to appeal.

In sum, for both of the reasons we have discussed, Pallares' waiver of his right to appeal the underlying removal order was procedurally defective for purposes of § 1326(d)(1)'s exhaustion requirement. For the same reasons, we hold that Pallares was deprived of a meaningful opportunity for judicial review. *See* § 1326(d)(2).

### 2. The State Annoy/Molest Misdemeanor as an Aggravated Felony

The government contends, however, that the IJ was not obligated to advise Pallares of his eligibility for relief from deportation because she correctly characterized the Annoy/ Molest conviction, Cal.Penal Code § 647.6(a), as an aggravated felony of "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), and therefore, properly determined that Pallares was ineligible for cancellation of removal.

 A deportable alien is eligible for discretionary relief in the form of cancellation of removal if he (1) has been an alien lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) has *not* been convicted of any aggravated felony. *See* INA § 240A(a); 8 U.S.C. § 1229b(a). Because Pallares satisfies the first two grounds for eligibility, the issue turns on whether his 1999 state Annoy/Molest misdemeanor conviction qualifies as an "aggravated felony" for federal deportation purposes. If it does, he was ineligible for discretionary relief from removal, and the IJ did not err in advising him accordingly at the hearing. If it does not, however, he *was* eligible for cancellation of removal, and the determination that Cal.Penal Code § 647.6(a) constitutes an aggravated felony of "sexual

abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A) resulted in a significant violation of his procedural rights. *See Muro–Inclan*, 249 F.3d at 1183. As we have previously made clear, the requirement that an IJ inform an alien of his ability to apply for relief from removal is "mandatory," *id.*, and failure to so inform him serves to deprive him of his right to an administrative appeal and to judicial review. *Leon–Paz*, 340 F.3d at 1005.

▮▮▮▮▮ In making a determination as to whether a prior conviction qualifies as an aggravated felony for federal deportation purposes, we employ the analytical model set forth in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *See U.S. v. Corona–Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002). Under *Taylor's* "categorical" approach, "the issue is not whether [the] actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by [the state statute] constitutes an aggravated felony," and we "look only to the fact of conviction and the statutory definition of the prior offense" to make this determination. *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143. If we determine that the statute which the defendant was found to have violated is broader in scope than the federal provision—that the state statute proscribes not only conduct that would constitute an "aggravated felony" but also conduct that would not—then the state conviction may not be used, except under a "modified categorical" approach. Under the modified categorical approach, the conviction may be used only if the record contains " 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction.' " *U.S. v. Rivera–Sanchez*, 247 F.3d 905, 908 (9th Cir.2001) (en banc) (citation omitted). Moreover, when applying the modified categorical approach, we are limited to consulting a narrow and carefully specified set of documents in order to determine whether the particular conviction qualifies. *See U.S. v. Franklin*, 235 F.3d 1165, 1170 n. 5 (9th Cir.2000) (listing the documentation that may be reviewed). The burden of proving that the specific conduct of which the defendant was convicted constitutes an "aggravated felony" rests squarely with the government. *Id.* at 1172. In cases in which either the documents introduced by the government are not within the specified group or the documents introduced do not establish on their face that the prior conviction was for criminal conduct that falls within the federal prohibition, the government has not met its burden and the conviction may not be used as a predicate offense for purposes of 8 U.S.C. § 1326. *See id.*

Section 1101 defines the term "aggravated felony," as used in the provision rendering aliens convicted of such crimes ineligible for cancellation of removal, *see* 8 U.S.C. § 1229b(a)(3), as including "sexual abuse of a minor." *See* 8 U.S.C. § 1101(a)(43)(A). It is this offense within which, according to the government, the conduct proscribed by California's Annoy/Molest misdemeanor conviction falls. Section 647.6(a) of the California Penal Code, the misdemeanor statute to which Pallares pled guilty, reads, in pertinent part:

> (a) Every person who annoys or molests any child under the age of 18 shall be punished by a fine not exceeding one thousand dollars ($1,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment.

Following *Taylor*, we begin by considering whether the conduct prohibited by California's § 647.6(A) falls within the meaning of the term "sexual abuse of a minor" as used in § 1101(a)(43)(A). We do so, bearing in mind that, under the categorical approach, in order for a violation of the

state statute to qualify as a predicate offense, the "full range of conduct" covered by the state statute must fall within the scope of the federal statutory provision. *See Franklin*, 235 F.3d at 1169. The undefined federal term "sexual abuse of a minor" is construed by "employing the ordinary, contemporary, and common meaning of the words that Congress used." *United States v. Baron–Medina*, 187 F.3d 1144, 1146–47 (9th Cir.1999) (citations omitted). *Black's Law Dictionary* defines "sexual abuse" as "illegal sexual acts performed against a minor by a parent, guardian, relative, or acquaintance." BLACK'S LAW DICTIONARY (6th Ed.1990). Similarly, among the pertinent definitions of "abuse," *Webster's* includes "misuse ... to use or treat so as to injure, hurt, or damage ... to commit indecent assault on ... the act of violating sexually ... [and] rape or indecent assault not amounting to rape." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 8 (3d Ed.1981).

 We now consider the range of conduct proscribed by the state Annoy/Molest misdemeanor statute. *See Taylor*, 495 U.S. at 602, 110 S.Ct. 2143. We should note first that California has a *felony* statute that prohibits lewd and lascivious acts against minors, *see* Cal. Pen.Code § 288(a),[6] which requires (1) the touching of an underage child's body (2) with a sexual intent. *See People v. Lopez*, 19 Cal.4th 282, 289, 79 Cal.Rptr.2d 195, 965 P.2d 713 (1998). The misdemeanor statute at issue here applies to less serious conduct. *See id.* at 290. As the California Supreme Court has put it, "Section 288, subdivision (a), requires a touching ... done with lewd intent. Section 647.6, sub-

division (a), on the other hand, requires *an act objectively and unhesitatingly viewed as irritating or disturbing*, prompted by an abnormal sexual interest in children." *Id.* (emphasis in original). In short, whereas the California felony statute requires a physical touching, the misdemeanor statute requires only an act that is irritating or annoying. Unsurprisingly—particularly because it applies only to minors of less than 14 years of age—we have held that the California felony statute meets the categorical *Taylor* test for an aggravated felony, *see U.S. v. Baron–Medina*, 187 F.3d 1144 (9th Cir.1999), but we have not previously been asked to decide whether the misdemeanor statute, which is applicable to persons under the age of 18, does as well.

"The word 'molests' " in the misdemeanor statute, section 647.6(a) ... "is, in general, a synonym for 'annoy'," *People v. Pallares*, 246 P.2d 173, 112 Cal.App.2d Supp. 895, 901 (1952), and as the California Supreme Court observed in *Lopez*:

> Annoy means to *disturb* or *irritate*, especially by continued or repeated acts [citations]; to *weary* or *trouble*; to *irk*; to offend; ... (Webster's New Internat. Dict.2d ed.). The same dictionary defines "molest" as, "to interfere with or meddle with unwarrantably so as to injure or disturb." ... Annoyance or molestation signifies something that works hurt, *inconvenience, or* damage.

19 Cal.4th at 289–90, 79 Cal.Rptr.2d 195, 965 P.2d 713 (emphasis added). Under the ordinary meaning of its statutory terms, as well as under the California Supreme Court's understanding of its provi-

---

6. Section 288(a) reads:

Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

sions, § 647.6(a) is significantly broader than 8 U.S.C. § 1101(a)(43)(A). The Annoy/Molest misdemeanor statute proscribes conduct that both would and would not constitute "sexual abuse": a person can "annoy" or "molest" a minor under the age of 18 *without* "injur[ing], hurt[ing], or damag[ing]" the individual, *see supra* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 8 (defining "abuse"), by committing acts that are objectively "irritat[ing]" or "disturb[ing]" in the presence of a person under 18 years of age or merely by causing that individual "inconvenience." *See id.* at 290, 79 Cal.Rptr.2d 195, 965 P.2d 713.

As a practical matter, individuals are convicted under the Annoy/Molest statute of acts that do not constitute "sexual abuse" under § 1101(a)(43)(A). For example, as the district court noted, *see supra* note 3, "I get from my own experience with the young minor charges ... [that] sometimes the charges [under such statutes] result from someone, for example, urinating in a public place and a child happens to see him." Similarly, individuals have been convicted of misdemeanors under § 647.6(a) for acts that include offering minor females a ride home, driving in the opposite direction, and refusing to let them out of the car until they escaped, *In re Sheridan,* 230 Cal.App.2d 365, 40 Cal.Rptr. 894 (Cal.Ct.App.1964), and repeatedly driving past a young girl, looking at her, and making hand and facial gestures at her, *People v. Thompson,* 206 Cal.App.3d 459, 253 Cal.Rptr. 564 (Cal.Ct. App.1988). In the latter case, the court concluded that the elements of the misdemeanor statute had been satisfied because, "although the conduct was not particularly lewd," *Lopez,* 19 Cal.4th at 292, 79 Cal. Rptr.2d 195, 965 P.2d 713 (discussing *Thompson* ), the "behavior would place a normal person in a state of being unhesitatingly irritated, if not also fearful." *Thompson,* 206 Cal.App.3d at 467, 253 Cal.

Rptr. 564. Likewise, in *People v. LaFontaine,* a case in which an individual offered a thirteen year old boy a ride home and unsuccessfully solicited a sexual act from him while the two were in the vehicle, the court upheld the defendant's conviction under § 647.6(a), but not under § 288(a). 79 Cal.App.3d 176, 144 Cal.Rptr. 729 (1978), *overruled on other grounds by Lopez,* 19 Cal.4th at 293, 79 Cal.Rptr.2d 195, 965 P.2d 713. The California court reasoned that, under the misdemeanor statute, no actual contact need be shown in order to establish the crime of annoying or molesting a person under the age of 18. It then concluded by holding: *"Words alone may constitute the annoyance or molestation proscribed." Id.* at 185, 79 Cal.Rptr.2d 195, 965 P.2d 713 (emphasis added).

In sum, both the ordinary meaning of the statutory terms and the cases in which California courts have upheld convictions under § 647(a) demonstrate that the state Annoy/Molest statute covers conduct that does not qualify under the provision listing "sexual abuse" as an aggravated felony, as well as conduct that does. Indeed, as *LaFontaine* illustrates, Section 647.6(a) would cover mere solicitation of a sexual act, if objectively annoying; however, solicitation, by a young male, for example, of a young female approaching the age of 18 years may in some circumstances be objectively irritating or annoying, but such conduct does not, standing alone, rise to the level of "sexual abuse." Nor would such conduct constitute sexual abuse were it a young woman who solicited a 17 year-old female to engage in sexual relations, regardless of how irritating or annoying the solicitation or solicitations might be objectively. Moreover, we reject the government's argument that the requirement that the defendant be motivated by a desire for sexual gratification justifies classifying all offenses covered by the state Annoy/Molest statute as "sexual abuse." "Abuse" requires more than improper mo-

tivation; it requires conduct that is abusive. Thus, the young man or woman's simple solicitation of sex from a seventeen year-old female would not constitute "sexual abuse" even if he or she were motivated by a desire for sexual gratification (and in most cases of solicitation, that surely is the motivation.)

In sum, the first inquiry we make in determining whether the *Taylor* categorical approach applies is whether the *conduct* covered by the California statute falls within the commonplace meaning of "sexual abuse." *See Baron–Medina*, 187 F.3d at 1147 ("The *conduct* reached by Section 288(a) [the felony sexual statute] indisput-

ably falls within the common, everyday meanings of the words 'sexual' and 'minor'," as well as "abuse.") (emphasis added). As the California Supreme Court recognized in *Lopez*, the California misdemeanor statute is intended to outlaw, *inter alia*, "objectively annoying conduct." 19 Cal.4th at 292, 79 Cal.Rptr.2d 195, 965 P.2d 713. Such conduct may involve neither harm or injury to a minor, nor the touching of or by a minor, and does not constitute "sexual abuse of a minor" under the *Taylor* categorical test approach, regardless of a defendant's lewd intent.[7]

Because we conclude that § 647.6(a) reaches not only conduct that

---

7. The government cites several decisions of other circuits which, it argues, have held that state misdemeanor convictions relating to child sexual matters constitute aggravated felonies of "sexual abuse of a minor" under § 1101(a)(43)(A). None of these cases is in any respect inconsistent with our decision. *U.S. v. Zavala–Sustaita*, 214 F.3d 601 (5th Cir.2000), involved a Texas *felony* statute that proscribes conduct which is indecent in nature, not acts which merely annoy or irritate. Thus, the statute is materially different from the California misdemeanor provision at issue here. In *U.S. v. Gonzales–Vela*, 276 F.3d 763 (6th Cir.2001), the defendant, who was convicted of "despicable sexual touching of a five-year-old girl and of a seven-year-old girl," did not seriously contend that "the acts to which he pled guilty [did] not constitute sexual abuse of a minor." *Id.* at 766. His first argument, which the court dismissed out of hand, was that it was not clear that he was charged under the statute with abuse of a "minor" rather than abuse of a "mentally retarded" person. His more substantial argument was that misdemeanor convictions do not fall within the term "aggravated felony" under § 1101(a)(43). The court squarely rejected this argument as well. In reaching its decision, the court had no occasion to consider whether the state statute at issue met the categorical requirements of *Taylor*, or whether the conduct involved met the modified categorical test. Similarly, in *U.S. v. Marin–Navarette*, 244 F.3d 1284 (11th Cir.2001), the issue was once again whether misdemeanors could qualify as "aggravated felonies." The court concluded that they could and then held

that the particular act of which the defendant was convicted constituted "flagitious conduct" in that the defendant "got on top of [a fourteen year-old girl] and inserted his finger into her vagina." *Id.* at 1286. Again, the court did not consider whether the statute itself met the categorical *Taylor* requirements. It simply found that the particular conduct involved fell within the scope of the term "sexual abuse of a minor." Finally, in *In re Small*, 23 I & N 488 (2002), after considering the prevailing circuit law, the Board reversed its previous position and concluded that the term "aggravated felony" as set forth in § 1101(a)(43) *could* encompass misdemeanor convictions in appropriate instances. In *Small*, the alien had engaged in sexual contact with the 11 year-old victim. The New York statute at issue proscribed "sexual contact," defined as the "touching of the sexual or other intimate parts of a person" of less than 14 years-of-age. *Id.* at 449. Although the BIA did not consider whether the statute itself met the *Taylor* categorical test, it concluded that the conduct in which the alien engaged constituted "sexual abuse of a minor." *Id.* In any event, like the other statutes at issue in the cases cited by the government, and unlike the California Annoy/Molest misdemeanor provision we consider here, the New York statute in *Small* proscribed lewd or indecent conduct with a minor and did *not* permit conviction on the basis of acts that annoy or irritate a person under the age of 18.

would constitute the aggravated felony of "sexual abuse" but conduct that would not, we next apply the "modified categorical" test, under which we look to the pertinent documents in the record in order to determine whether the government has shown that Pallares pled guilty to conduct comprehended within the scope of the federal provision. *See Franklin*, 235 F.3d at 1172. Here, of the documents we may consult, *see id.* at 1170 n. 5, we have available only the charging instrument and the presentence report. Neither shows that Pallares pled guilty to acts which satisfy the elements of "sexual abuse." The Complaint charges four misdemeanor offenses which appear to have arisen out of the same incident, on the same day. Count 1, for "Annoy/Molest," the only offense to which Pallares pled guilty, merely repeats the terms of the misdemeanor statute, alleging that Pallares "did unlawfully annoy and molest a child ... under the age of eighteen years." Equally unhelpful to the government is the presentence report,[8] which lists the date and statute of conviction, the court of conviction, the applicable sentencing guideline and the sentence for the Annoy/Molest charge.[9]

We conclude that the government has failed to meet its burden and, accordingly, that Pallares' Annoy/Molest conviction does not qualify as "sexual abuse of a minor" within the meaning of the federal provision. Because the IJ improperly characterized Pallares' California conviction as the aggravated felony of "sexual abuse of a minor," and, as a result, erroneously informed him that he was ineligible to receive discretionary relief, Pallares' waiver of his right to appeal was defective and the underlying deportation hearing deprived him of a meaningful opportunity for judicial review.

B. *"Fundamentally Unfair" and "Prejudice"*

 Notwithstanding the serious defects in Pallares' deportation proceeding, we may determine that the removal order was "fundamentally unfair" under § 1326(d)(3) and dismiss the indictment only if Pallares can show that he suffered prejudice as a result. *See Leon–Paz,* 340 F.3d at 1007. To prove prejudice, Pallares need not show that he actually would have been granted relief; rather, he must show only that he had a "plausible" basis for seeking relief from deportation. *Arrieta,*

---

8. At the hearing in the district court, the government admitted that these documents were inadequate to prove its case:

> There probably aren't records that we'll be able to find in California that will show exactly what the defendant pled to in terms of elements previously filed, and that would be an issue, and so I rest my argument based upon California State Court's interpretation of § 646.6.

The district court agreed that the available documentation failed to show that Pallares pled guilty to acts which satisfy the elements of "sexual abuse":

> And so without the arrest report from California to see exactly what the circumstances were, I can't tell. I can only surmise from looking at the other Counts that he pled guilty to,[sic] which were indecent

exposure, and so I have to assume that again that's another thing that could have been related to someone drunk and urinating in public and not really what we would call an aggravated felony for the purposes of deportation.

9. The presentence report also contains a short, unhelpful description of the facts underlying the Annoy/Molest conviction which states, "The Criminal Indictment revealed that the defendant exposed his genitals to a female minor in a public place." In any event, it is well established, and the government does not contest, that we may not consider the factual description in a presentence report in determining whether a defendant pled guilty to the elements of an aggravated felony. *See U.S. v. Corona–Sanchez,* 291 F.3d 1201, 1212 (9th Cir.2002) (en banc).

224 F.3d at 1079. Specifically, he is entitled to the dismissal of his indictment if, upon a review of the record, it appears that an IJ could have concluded that his potential claim for relief from deportation would be "plausible."

■■■ It appears to us that it is "plausible" that an IJ might have so concluded. Although there are undeniably negative equities stemming from Pallares' two misdemeanor convictions, his favorable equities are substantial. *See, e.g., Georgiu v. INS,* 90 F.3d 374 (9th Cir.1996) (balancing the positive and negative equities to evaluate the plausibility of petitioner's claim for discretionary relief from deportation under Section 212(c) of the former INA). For example, Pallares' earlier application for cancellation of removal reveals that, at the time of his deportation in 2000, he had lived in the United States without departing for 24 years—more that half his life. *See Pablo v. INS,* 72 F.3d 110, 113 (9th Cir.1995) (listing "residence of long duration in this country" as a factor to be considered in determining whether to grant discretionary relief). Throughout most of this time, he had an excellent work history: he was steadily employed, paid taxes, and was never on public assistance. *Id.* (listing "history of employment" and "evidence of value and service to the community" as positive factors to be considered). Further, he is married to a legal permanent resident who has also been gainfully employed since their union in 1989 and has never received public assistance, *id.,* and who supports his desire to stay here. *See id.* (listing "family ties" in the U.S. as a positive factor to be considered). The presentence report further reveals that, after his deportation in 2000, Pallares illegally reentered the country in order to be reunited with his wife and his two children, all of whom he helps support. *See id.* The couple rents a house in Glendale, California, *see id.* (listing "the existence of ... property ties" a factor to be considered), where Pallares resided with his immediate family until the time of his detention. Although Pallares has siblings in Mexico, his parents are no longer alive. *See id.*

In short, it appears from the record that there are significant positive equities that weigh in favor of Pallares' claim for discretionary relief from deportation. Nevertheless, the district court did not reach the issue of prejudice, and we prefer that it consider it initially. *See Leon–Paz,* 340 F.3d at 1007. Accordingly, we remand for the district court to determine whether Pallares has shown that it is plausible that the positive equities in his favor, when cumulatively considered, could outweigh the negative ones associated with his criminal conduct.

## IV. CONCLUSION

We hold that, under the *Taylor* categorical approach, a violation of the California Annoy/Molest misdemeanor statute, Cal. Pen.Code § 647.6(a), does not constitute the commission of the aggravated felony of "sexual abuse of a minor," and that the judicial records relating to Pallares' misdemeanor conviction that we are allowed to consider do not establish that the particular conduct of which he was convicted falls within that term. Consequently, Pallares was eligible for the discretionary relief of cancellation of removal under 8 U.S.C. § 1229b(a). Because the Immigration Judge erroneously advised him that he was not eligible for such relief, and because the IJ otherwise failed to afford him a fair chance to decide whether to appeal his removal order, Pallares' waiver of his right to appeal was not "considered and intelligent." Accordingly, we hold that Pallares' collateral attack on the underlying order of deportation is not barred by the exhaustion requirement of § 1326(d), and that he was deprived of a meaningful

opportunity for administrative and judicial review. The remaining question is whether Pallares was prejudiced by the substantial procedural defects in the order: specifically, did he have a "plausible" claim for discretionary relief at the time of his deportation hearing? Although it appears from the record that there were significant positive equities that weighed in Pallares' favor, we remand with directions to the district court to consider in the first instance whether it is plausible to conclude that those positive equities could outweigh the negative equities resulting from his unlawful behavior.

REVERSED and REMANDED.