**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NOE EZEQUIEL CUENCA-VEGA,

Defendant - Appellant.

No. 12-10356

D.C. No. 3:10-cr-00419-SI-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Susan Illston, Senior District Judge, Presiding

Argued and Submitted August 14, 2013
San Francisco, California

Before: REINHARDT, NOONAN, and HURWITZ, Circuit Judges.

_____

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

I.

Noe Cuenca-Vega was born in Mexico in 1979 and moved to the United States at age 13 with his mother, who became a naturalized United States citizen.[1] In 1998, Cuenca became a lawful permanent resident. In 2000, he pleaded no contest to possession of methamphetamine. He served his sentence of 60 days in a county jail and was removed to Mexico on September 24, 2002. On May 13, 2010, Cuenca was arrested by a U.S. Immigration and Customs Enforcement agent, having reentered the United States without inspection.[2] He was convicted of criminal reentry, 8 U.S.C. 1326(a), at a jury trial and sentenced to 77 months of federal imprisonment.

Prior to trial, Cuenca had moved to dismiss the criminal reentry indictment on the ground that his 2002 removal order was invalid. He argued that he was

---

[1]The record does not indicate when Cuenca's mother was naturalized, but it does show that Cuenca obtained his lawful permanent resident status through his mother on November 19, 1998. In order to obtain adjustment of status for her son, Cuenca's mother must already have been a citizen. 8 U.S.C. § 1151(b)(2)(A)(i). We can therefore assume that she was a citizen by 1998.

[2]After being deported, Cuenca was found in the United States and removed four additional times before the entry at issue here. The government appears to concede that these removals were reinstatements of Cuenca's 2002 removal order and therefore cannot separately support Cuenca's current conviction under 8 U.S.C. § 1326. *See United States v. Arias-Ordonez*, 597 F.3d 972, 978 (9th Cir. 2010).

denied due process in his removal hearings because the Immigration Judge (IJ) did not have sufficient evidence to conclude that his 2001 conviction was a "controlled substances offense" within the meaning of 8 U.S.C. § 1227(a)(2)(B). On appeal, Cuenca argues that he was also denied due process on the grounds that the IJ failed to advise him of his apparent eligibility for voluntary departure, and that his immigration lawyer was ineffective in failing to file an appeal. We consider here only the IJ's failure to advise Cuenca of his apparent eligibility for voluntary departure.

## II.

A defendant charged with illegal reentry can prevail on a collateral challenge to his underlying removal when he demonstrates (1) that the IJ failed to inform him of his apparent eligibility for relief and (2) that he had plausible grounds for relief. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1262-63 (9th Cir. 2013); *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003). The parties agree that Cuenca has satisfied the first requirement. The government concedes that "the IJ was obligated to advise Cuenca of his apparent eligibility for voluntary departure during the 2002 deportation proceedings;" "[t]he record does not contain the required advisement;" "[a]n IJ's failure to advise an alien of those forms of relief from deportation for which he is apparently eligible constitutes a

3

due process violation;" and "the parties agree that the IJ erred."   The parties

dispute whether Cuenca has satisfied the second requirement.  The government

argues that Cuenca has not demonstrated that he had plausible grounds for relief

because "the record is silent on whether defendant would have availed himself of

the opportunity for voluntary departure had it been offered" and "the record shows

that defendant was actively pursuing a strategy to avoid removal altogether."

We reject this argument.  The government overstates Cuenca's burden to

demonstrate a plausible ground for relief. Under the law of the circuit, Cuenca

need make only a prima facie showing of prejudice.

> [A]n alien who wishes to challenge the legality of a previous deportation bears the initial burden of producing evidence indicating that a violation of an INS regulation occurring during the alien's deportation prejudiced his or her interests protected  by the regulation in such a manner so as actually to have had the potential for affecting the outcome of the proceedings.  Once such a prima facie showing of prejudice is made, the burden then shifts to the government to show that the violation could not have changed the outcome of the deportation proceedings.

*United States v. Cerda-Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986).  *See also*

*United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003).  The

government's concession that Cuenca was eligible for pre-conclusion voluntary

departure amounts to a concession that Cuenca has made a prima facie showing of

prejudice.  Cuenca "does not have to show that he actually would have been

4

granted relief.  Instead, he must only show that he had a 'plausible' ground for relief from deportation."[3]  *United States v. Arrieta*, 224 F.3d 1076 (9th Cir. 2000). It then becomes the government's burden, not Cuenca's, to show that the violation could not have changed the outcome of the proceedings.

---

[3] "Where the relevant form of relief is discretionary," the noncitizen must also "make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *Rojas-Pedroza*, 716 F.3d at 1263 (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011)). Cuenca has made a plausible showing, uncontested by the government, that the IJ would have exercised discretion in his favor.  "[I]n exercising discretion on a voluntary departure application an IJ should take into account both favorable and unfavorable factors." *Rojas-Pedroza*, 716 F.3d at 1264 (internal citation and quotation marks omitted).  Favorable equities include "long residence" and "close family ties to the United States." *Id.* at 1265.  Unfavorable equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* (internal citation and quotation marks omitted).

At the time Cuenca was ordered removed, he had several positive equities: he had been in the United States for ten years, since age 13; his mother was a United States citizen; he had graduated from a California high school; and he had been employed from 1999 to 2002.  His negative equities at the time were only the predicate conviction for possession of methamphetamine, for which he received a sentence of 60 days, and some traffic offenses.  These offenses are not sufficiently serious to make it implausible that he would have been granted relief. *See, e.g.*, *In re: Orridge*, 2011 WL 3443885 (BIA 2011)(recognizing that positive equities could outweigh the noncitizen's conviction for possession of crack cocaine); *In re: Franciso Franco*, 2005 WL 952426 (BIA 2005)(affirming discretionary grant of voluntary departure to noncitizen convicted of possession of cocaine); *In re: Luis Alonzo Gonazles-Figeroa*, 2006 WL 729784 (BIA 2006)(affirming grant of voluntary departure where petitioner had four convictions for assault, one for resisting arrest, and numerous other arrests).

5

The government argues that at the time of the deportation proceedings, Cuenca was attempting to expunge his criminal conviction and thus would not have accepted an offer of voluntary departure. This does not meet the government's burden. Cuenca's seeking of expungement was not incompatible with accepting voluntary departure. Although Cuenca would have had to concede removability to obtain voluntary departure, he could nonetheless have continued to seek expungement from abroad, had he not obtained it prior to accepting voluntary departure.[4] If he obtained expungement afterwards, he could have reopened his removal proceedings. *See Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1106 (9th Cir. 2006) ("[A] deportation based upon an invalid conviction is not 'legally executed' and . . ., therefore, the defective deportation may be reopened after the petitioner has left the country."). Alternatively, he could have applied for a new visa through his United States citizen mother. In addition to being compatible with his pursuit of expungement, a strategy of accepting voluntary departure presented at least one strategic advantage for Cuenca: at minimum, he would not have been subject to the criminal reentry statute unless he was subsequently deported.

---

[4] Cuenca would have needed to concede only the fact of his conviction, not the factual allegations underlying the conviction, so that accepting voluntary departure and seeking expungement would not have been inherently contradictory postures. *See Reyes-Torres v. Holder*, 645 F.3d 1073, 1077 n.1 (9th Cir. 2011).

The government argues that our review of Cuenca's claim should use a plain error standard because Cuenca did not present before the district court any discussion of the IJ's failure to advise him of his apparent eligibility for voluntary departure. This argument is incorrect. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992). Here, Cuenca's voluntary departure argument "is not a new claim. Rather, it constitutes an alternative argument to support what has been his consistent claim from the beginning," *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004), namely, that the 2002 deportation order was invalid as violative of due process: in short, the invalid order cannot support a conviction for criminal reentry. Thus, we review the denial of a motion to dismiss de novo, as we do "when the motion to dismiss is based on an alleged due process defect in the underlying deportation." *Id.* at 1094. Under de novo review, it is clear that Cuenca has made a prima facie showing of eligibility for relief and of prejudice,[5] and that the government has not met its burden of showing that the due process violation could not have changed the outcome of the proceedings.

---

[5]All of the facts necessary to sustain the voluntary departure argument were before the district court in the transcripts of the deportation proceedings.

7

Even under plain error review, Cuenca would prevail. "Rule 52(b) [of the Federal Rules of Criminal Procedure] permits an appellate court to recognize a 'plain error that affects substantial rights' even if the claim of error was 'not brought' to the district court's 'attention.'" *United States v. Marcus*, 130 S.Ct. 2159, 2164 (2010)(quoting Fed. R. Crim. P. 52(b)). The "plain error rule . . . sets forth criteria that a claim of error not raised at trial must satisfy." *Id.* at 2166. Under plain error review, a defendant must demonstrate that

> (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Marcus*, 130 S.Ct. 2159, 2164 (2010)(quoting *Puckett v. United States*, 556 U.S. 129, ___ (2009))(alterations by the Supreme Court).

There is no doubt that holding the deportation order valid was a legal error that was clear and obvious under the law.[6] The government argues that Cuenca did not satisfy the third requirement for plain error because he did not show that "the error actually prejudiced his substantial rights." The third requirement means that "there must be a reasonable probability that the error affected the outcome of the trial." *United States v. Marcus*, 130 S.Ct. at 2164. Here, the legal error affected the outcome of the trial because the due process violation would have required the court to dismiss the indictment with prejudice.

The government also argues that the error did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings" because "[a]fter his

_____

[6]The government cites *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir. 1997), for the proposition that a plain error is an error that is "so clear-cut, so obvious, a competent district court judge should be able to avoid it without benefit of objection." The Supreme Court explicitly rejected *Turman*'s approach in *Henderson v. United States*, 133 S.Ct. 1121, 1129 (2013), holding that there was plain error even when the District Judge had no way to know at the time he made his ruling that it was error, "and perhaps not even clairvoyance could have led him to hold to the contrary. . . . [P]lain error review is not a grading system for trial judges." The government is therefore incorrect when it asserts that "Cuenca must show that a 'competent' district court would have identified those errors - and determined if they prejudiced Cuenca - without development of the record by the parties." Here, finding the deportation to be valid was clear error, satisfying the first two criteria, because Cuenca was not advised of his apparent eligibility for relief, as the government concedes, and because, whether or not it was called to the district court's attention, he had plausible grounds for relief, unrebutted by the government, as the record reveals.

2002 removal Cuenca was removed from the United States four separate times." Cuenca's behavior subsequent to his deportation has no bearing on whether the district court proceedings were fair when his 2002 deportation was deemed valid. When an individual is convicted based on an invalid deportation order that violated his right to due process, it must necessarily have a serious effect on the fairness and integrity of judicial proceedings.

### III.

Because Cuenca prevails on his voluntary departure argument, we need not consider his contentions regarding the insufficiency of the evidence or ineffective assistance of counsel.

**REVERSED.**

10

*US v. Cuenca-Vega*, No. 12-10356

HURWITZ, Circuit Judge dissenting:

Cuenca was removed in 2002 because of a drug conviction. He then re-entered the United States without authorization five times—committing several crimes while in the country—before finally being convicted of illegal reentry in 2012. The issue today is whether Cuenca can successfully collaterally attack his 2002 removal order and overturn the 2012 conviction. The majority holds that he can.

I disagree on two grounds. First, the appropriate standard of review for Cuenca's voluntary-departure due process claim, which he admits was first raised on appeal, is plain error. Second, Cuenca has not demonstrated prejudice from the alleged error.

**I**

In the district court, Cuenca asserted two due process claims relating to the 2002 removal order: (1) the immigration judge erred in ruling that he had been convicted of a controlled substance offense, and (2) the immigration judge committed a "separate due process violation" when he denied Cuenca's request for a continuance in order to seek post-conviction relief with respect to the California conviction that gave rise to the removal proceedings. Cuenca never argued below that the immigration judge also denied him due process by failing to advise him of the

1

possibility of voluntary departure. Cuenca's attorney therefore forthrightly conceded at oral argument that the voluntary-departure due process claim was not raised below.

To be sure, an argument made on appeal that is simply another way of supporting a claim made below is sufficient to trigger harmless error review. For example, in *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004), we reviewed for harmless error the appellant's argument that his conviction did not qualify as an aggravated felony under the categorical approach, despite his failure to pursue that precise argument below, because it was "an alternative argument to support what has been his consistent claim from the beginning": that his state law conviction could not qualify as an aggravated felony. *Id.* at 1095. Colloquially, the argument raised on appeal was "close enough" to that made below to avoid plain error review.

Here, in stark contrast, the only possible relationship between the claims Cuenca made below and the one he makes here is that they each derive generally from the Due Process Clause. That is not nearly close enough. By holding that Cuenca preserved his voluntary-departure claim by asserting entirely unrelated due process claims below, the majority has in effect removed any incentive for a defendant collaterally attacking a removal order to specify his problems with the order. Under the majority's logic, a defendant could preserve a Confrontation Clause claim for

2

appeal by raising a Speedy Trial Clause claim below; after all, both claims arise under the Sixth Amendment.

That approach stretches the doctrine of *Yee v. City of Escondido*, 503 U.S. 519 (1992), past the breaking point. In *Yee*, the plaintiff asserted a physical occupation Takings Clause claim below, but did not clearly assert a regulatory taking argument until reaching the Supreme Court. *Id*. at 534–35. The Court nonetheless treated the latter argument as preserved, noting that "arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate claims" but rather "separate arguments in support of a single claim—that the ordinance effects an unconstitutional taking." *Id*.

In *Yee*, both arguments focused on precisely the same wrong — the unconstitutional taking allegedly caused by the operation of the ordinance. In *Exxon Shipping Co. v. Baker*, the Supreme Court admonished us that *Yee* did not allow unfettered argument switching on appeal, holding that if "'statutory preemption' were a sufficient claim to give Exxon license to rely on newly cited statutes anytime it wished, a litigant could add new constitutional claims as he went along, simply because he had 'consistently argued' that a challenged regulation was unconstitutional." 554 U.S. 471, 486–87 (2008) (quoting *Yee*, 503 U.S. at 533). I therefore do not read *Yee* as allowing an appellant to allege on appeal an entirely

3

different error than that alleged below, but rather only to offer alternative arguments about why the error identified below requires relief.

The wrongs alleged in Cuenca's motion to dismiss the indictment relate to the substantive decision of the immigration judge on the controlled substance offense and his refusal to continue the hearing. The voluntary-departure claim focuses on an entirely different alleged error. I would therefore subject this new claim to plain error review.

## II

I have some doubt that the error here was plain. The error occurred not in the manner that the proceedings below were conducted, but rather in the 2002 immigration proceedings. In the collateral attack on those proceedings, the district court essentially acted in an appellate capacity, and I do not think it can be said to have denied due process by failing to anticipate an argument never made.

But more importantly, a defendant who claims on collateral attack that he was denied due process because an immigration judge failed to advise him of his eligibility for voluntary departure has the burden of proving not only that a due process violation occurred, but also that he was "actually prejudiced" by the error. *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1048–49 (9th Cir. 2012). The government has conceded that the immigration judge failed to advise Cuenca of his eligibility for pre-

4

conclusion voluntary departure. But, contrary to the majority's conclusion, that due process error is not enough to establish prejudice. Rather, Cuenca must also produce some concrete evidence that he "would have availed himself of the procedural protections denied him." *United States v. Cerda-Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986). Admittedly, our case law requires only that the defendant establish that it was "plausible" that he would have accepted voluntary departure, but the burden is nonetheless on the Cuenca to produce *some* evidence supporting his claim. *See United States v. Esparza-Ponce*, 193 F.3d 1133, 1138–39 (9th Cir. 1999) (acknowledging that failing to advise an alien of his right to contact the Mexican Consulate violated due process, but upholding the district court's conclusion that the defendant did not prove prejudice because he had "not demonstrated – nor even alleged – that he would have contacted the consul if he had been informed of his right to do so"); *cf. United States v. Rangel-Gonzales*, 617 F.2d 529, 532 (9th Cir. 1980) (holding that defendant met his burden to show prejudice through an affidavit stating that he would have contacted his consulate had he been made aware of his right to do so).

Cuenca has entirely failed to meet this evidentiary burden. The record lacks even an affidavit from Cuenca that if offered voluntary departure in 2002, he would have accepted it.

5

The majority attempts to fill in this evidentiary void in two ways. First, it conflates the government's admission that Cuenca would have been eligible for voluntary departure, which established the first prong of the prejudice analysis, with a concession that he had also established the second prong, plausibility. Mem. Disposition at 5. Second, the majority itself constructs reasons why Cuenca might have accepted voluntary departure if offered. *Id.* at 6–7.

The majority's speculation is not implausible. But one could equally well speculate to the contrary. If opting for voluntary departure, Cuenca would have been required to concede removability, 8 C.F.R. § 1240.26(b)(1)(i), and thus would have abandoned his chief argument for remaining in the United States — that his California conviction was not for a "controlled substance offense." Moreover, his departure would likely have been sooner if he chose voluntary departure than if the entire administrative and judicial process were fully played out. The issue is not whether my speculation is more plausible than that of the majority, but whether Cuenca himself has established plausibility.

Moreover, even if Cuenca had made some record showing of plausibility, the government would be allowed to attempt to rebut that showing. *See United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003) ("Once Gonzalez makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate

6

that the procedural violation could not have changed the proceedings' outcome."). In *United States v. Melendez-Castro*, 671 F.3d 950 (9th Cir. 2012), after concluding that the defendant was eligible for voluntary departure but "never had a genuine opportunity to apply for voluntary departure or to present evidence of the factors favoring this relief," we remanded to the district court to "fully analyze the issue of prejudice" in the first instance. *Id.* at 954–55. The majority today denies the government any real opportunity to challenge Cuenca's assertions, concluding that the government has not rebutted the reasons offered for the first time on appeal—largely by the majority itself—to demonstrate plausibility. But, because the government did not know that Cuenca would make a new argument on appeal, it could hardly have rebutted it below. Even under the majority's view, the government deserves an opportunity to question Cuenca about the issue and determine whether he would have accepted voluntary departure in light of the effect of such a strategy on his substantive arguments, or whether he actually knew of the possibility of voluntary departure through sources other than the immigration judge, but nonetheless rejected it.

## III

For these reasons, I cannot conclude that the 2002 removal order was invalid.

I would affirm the judgment of the district court and respectfully dissent.[1]

---

[1] In light of its disposition, the majority does not treat Cuenca's other arguments—neither of which, like his voluntary-departure due process claim, were made below. Cuenca correctly asserts that the state law under which he was convicted punishes more conduct than is encompassed within the federal definition of a "controlled substance" offense in 8 U.S.C. § 1227(a)(2)(B)(i). Cuenca, however, admitted during his plea colloquy in the state court, that he possessed methamphetamine, which made him removable under 8 U.S.C. § 1227(a)(2)(B)(i). The record thus established the requisite crime under the modified categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013).

Nor has Cuenca demonstrated that his attorney's decision to pursue expungement in state court rather than appeal the immigration judge's removal order to the BIA plausibly affected the outcome of his removal proceedings. Absent some alteration of the crime of conviction in state court proceedings, Cuenca could not escape removal under § 1227(a)(2)(B)(i). And, Cuenca was unsuccessful in the expungement efforts.