**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YGNACIO CCAYHUARI OCAMPO,
               *Petitioner,*

      v.

ERIC H. HOLDER JR., Attorney
General,

              *Respondent.*

No. 06-71848

Agency No.
A072-687-371

OPINION

On Petition for Review or an Order of
the Bureau of Immigration Appeals

Argued and Submitted
July 14, 2010—San Francisco, California

Filed December 14, 2010

Before: Procter Hug, Jr., and Milan D. Smith, Jr.,
Circuit Judges, and Thomas F. Hogan,, Senior District
Judge.*

Opinion by Judge Thomas F. Hogan

---

*The Honorable Thomas F. Hogan, Senior United States District Judge
for the District of District of Columbia, sitting by designation.

20029

## COUNSEL

Amy M. Spicer (argued), Andrea Sheridan Ordin, Amy Liang, and Arti L. Bhimani, Morgan, Lewis & Bockius LLP, for the petitioner Ygnacio Ccayhuari Ocampo.

Kate Deboer Balaban (argued), Trial Attorney, Peter D. Keisler, Assistant Attorney General, Barry J. Pettinato, Senior Litigation Counsel, Francis W. Fraser, Senior Litigation Counsel, United States Department of Justice, Civil Division, Office of Immigration Litigation, for the respondent Eric H. Holder Jr., Attorney General.

## OPINION

HOGAN, Senior United States District Judge:

Ygnacio Ccayhuari Ocampo petitions for review of a Board of Immigration Appeals ("BIA") order denying as untimely his motion to reopen his immigration removal proceedings. Because a removal order that grants voluntary departure becomes final upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to

seek the BIA's review of the order, and not upon overstay of the voluntary departure period, we hold that the BIA correctly determined that Ccayhuari's motion to reopen was untimely. We therefore deny the petition.

**I**

Ccayhuari is a citizen of Peru who was admitted to the United States on December 1, 1988, as a nonimmigrant temporary worker with authorization to remain until October 14, 1990. AR 37, 920. After overstaying his visa, Ccayhuari applied for asylum in 1993 on the ground that he previously was a member of the Peruvian army and, as a result, he feared persecution by the Sandero Luminoso, which is more commonly referred to as the Shining Path. AR 31-34, 40-45. The former Immigration and Naturalization Service ("INS") began removal proceedings in 1999, AR 37-38, during which Ccayhuari admitted all factual allegations and conceded his removability, AR 40. On September 25, 2000, an Immigration Judge ("IJ") determined that Ccayhuari was credible and "his fear may be subjectively genuine, however, objectively the C[o]urt finds that there's no reasonable basis on which to find that anyone would want to harm the respondent since he has been absent from Peru for some 13 years." AR 47. Accordingly, the IJ denied Ccayhuari's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). AR 47. The IJ noted that, during an earlier proceeding, Ccayhuari had conceded his removability and that the IJ had designated Peru as the country for removal. AR 40-41. However, the IJ granted Ccayhuari's application for voluntary departure for 60 days. AR 48.

Ccayhuari appealed the IJ's decision to the BIA, which summarily affirmed the decision via an order dated November 12, 2002. AR 54. Ccayhuari then petitioned this court for review of the BIA's summary affirmance. AR 56-69. In 2003, while Ccayhuari's petition was pending before this court, he married a United States citizen and, a year later, his wife

began the process to have his status adjusted to become a permanent resident by filing an I-130 Petition for Alien Relative. AR 71, 73-74. On March 29, 2005, this court denied Ccayhuari's petition for review but, several months later, granted Ccayhuari's motion to stay the issuance of the mandate until the United States Citizenship and Immigration Services ("Immigration Services")[1] processed his wife's I-130 petition. AR 89. The Immigration Services approved the I-130 petition on December 16, 2005. AR 91.

On February 17, 2006, Ccayhuari filed a motion to reopen with the BIA, seeking consideration of his prima facie request for adjustment of status and to stay his voluntary departure period pending resolution of the motion. AR 14-20. On April 3, 2006, the BIA denied the motion to reopen as untimely because it was not filed within 90 days after the BIA's November 12, 2002, order.

Ccayhuari now petitions this court to reverse the BIA's decision and remand his case so he can proceed to adjust his immigration status. On October 17, 2006, the court granted a temporary stay of Ccayhuari's voluntary departure period pending the resolution of this petition.

## II

The BIA's denial of a motion to reopen is reviewed for abuse of discretion. *He v. Gonzales*, 501 F.3d 1128, 1130 (9th Cir. 2007). "The decision of the BIA should be left undisturbed unless it is 'arbitrary, irrational, or contrary to law.' " *Id.* at 1131 (quoting *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002)). "We review de novo the BIA's determination of purely legal questions." *Dela Cruz v. Mukasey*, 532 F.3d 946, 948 (9th Cir. 2008) (per curiam).

---

[1]"As of March 2003, INS became United States Citizenship and Immigration Services, an agency within the Department of Homeland Security." *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1013 n.1 (9th Cir. 2008).

### III

Ccayhuari contends that his motion to reopen was timely because it was not due until 90 days after entry of a "final" order of removal and, when an alien has been granted voluntary departure, an order of removal does not become "final" until the alien overstays the voluntary departure period. (Pet'r's Br. 10.) We disagree.

[1] Determining the deadline that applies to a motion to reopen filed by an alien who has been granted voluntary departure is a question of statutory interpretation. As this court previously explained, when interpreting a federal statute "we follow the procedure prescribed in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984)." *Acosta v. Gonzales*, 439 F.3d 550, 552 (9th Cir. 2006). "The first step under Chevron is to determine whether the statutory meaning is unambiguous." *Azarte v. Ashcroft*, 394 F.3d 1278, 1285 (9th Cir. 2005). "If congressional intent is clear, both the court and the agency must 'give effect to the unambiguously expressed intent of Congress.' " *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012 (9th Cir. 2006) (quoting *Chevron*, 467 U.S. at 843). "If, however, Congress has not directly addressed the exact issue in question, a reviewing court must defer to the agency's construction of the statute so long as it is reasonable." *Id.*

[2] The statute at issue in this case is the Immigration and Naturalization Act ("INA"), which is codified in Title 8 of the United States Code. The INA sets forth the procedures that apply to immigration removal proceedings at 8 U.S.C. § 1229a, which states in subsection (c)(7)(C)(i) that a motion to reopen "shall be filed within 90 days of the date of the entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i).

As this court recently concluded in *Vega v. Holder*,[2] how-

---

[2]The decision in *Vega* was issued four days after we heard arguments in this case.

ever, the statute is ambiguous because it neglects to define the phrase "final administrative order of removal." 611 F.3d 1168, 1170 (9th Cir. 2010). As a result, the *Vega* court deferred to the agency's interpretation of the deadline to file a motion to reopen as set forth in 8 C.F.R. § 1003.2(c)(2), which "requires that such a motion be filed within 90 days of [the date] when 'the final administrative decision was rendered in the proceeding sought to be reopened.' " *Id.* (emphasis omitted) (quoting 8 C.F.R. § 1003.2(c)(2)). The court held that, "[r]eading both the statute and the regulation together, 'a final administrative order of removal' is 'the final administrative decision . . . rendered in the proceeding sought to be reopened.' " *Id.* at 1171 (quoting 8 U.S.C. § 1229a(c)(7)(C)(i) and 8 C.F.R. § 1003.2(c)(2)). The court also determined that "the proceeding sought to be reopened" referred to the initial merits decision that an alien is removable. *Id.* (reasoning that the purpose of a motion to reopen is to offer new evidence and such evidence "can only pertain to the initial merits determination that the alien is removable"). The court was not presented with the issue of when such administrative decisions are deemed "final."

**[3]** In this case, Ccayhuari seeks to reopen the initial merits determination that he is removable so he can offer new evidence that he is eligible to adjust his immigration status based on his marriage and the Immigration Service's approval of his wife's I-130 petition. The "administrative decision" at issue, then, is the BIA's November 12, 2002, order summarily affirming the IJ's determination that Ccayhuari was removable and ordering his removal if he failed to voluntarily depart within 30 days of the date of the order. Ccayhuari argues, however, that the BIA's November 12, 2002, order was not "final" because, pursuant to a regulation codified at 8 C.F.R. § 1241.1(f),[3] a removal order does not become "final" until an alien overstays his voluntary departure period.

---

[3]8 C.F.R. § 1241.1 was issued by the Department of Homeland Security in 2005, *Thapa v. Gonzales*, 460 F.3d 323, 333 (2d Cir. 2006), which was after the BIA's order was issued in this case but before Ccayhuari moved to reopen his removal proceedings.

**[4]** 8 C.F.R. § 1241.1(f) states that an order of removal becomes final "[i]f an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days." This court has never addressed the interpretation of 8 C.F.R. § 1241.1(f) as it pertains to the timeliness of motions to reopen. Two other circuits, however, considered the application of 8 C.F.R. § 1241.1(f) to determine whether a removal order was final for the purpose of judicial review and both circuits held that 8 C.F.R. § 1241.1(f) was unenforceable because it conflicted with the statutory definition of finality provided in 8 U.S.C. § 1101(a)(47)(B). *See Thapa*, 460 F.3d at 334; *Obale v. Attorney General*, 453 F.3d 151, 160 (3rd Cir. 2006), *superseded by statute on other grounds as stated in Patel v. Attorney General*, 619 F.3d 230 (3rd Cir. 2010).

In *Thapa* and *Obale*, the United States Courts of Appeals for the Second and Third Circuits, respectively, considered whether they had jurisdiction to stay orders of voluntary departure issued by an IJ or the BIA. 460 F.3d at 324; 453 F.3d at 154. To answer this question, both courts analyzed whether a removal order that granted voluntary departure qualified as a "final order of removal" under 8 U.S.C. § 1252, which authorizes federal courts to exercise jurisdiction over such orders. 460 F.3d at 332-34; 453 F.3d at 157-60. In both *Thapa* and *Obale*, the courts reviewed the applicability of 8 C.F.R. § 1241.1(f) to determine whether it defines when a removal order becomes "final" in cases involving an IJ or BIA order permitting voluntary departure. 460 F.3d at 333-34; 453 F.3d at 159-60. Both courts rejected such an interpretation as inconsistent with the statutory definition of a final order of removal found in 8 U.S.C. § 1101(a)(47)(B), which states that a removal order is final only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order. 460 F.3d at 334; 453 F.3d at 160. As a result, the courts in *Thapa*

and *Obale* declined to enforce 8 C.F.R. § 1241.1(f). 460 F.3d at 334; 453 F.3d at 160.

**[5]** Although the decisions in *Thapa* and *Obale* do not involve the precise issue presented here — whether a removal order that permits voluntary departure is final upon its issuance or upon expiration of the voluntary departure period for the purpose of determining the timeliness of a motion to reopen—we nevertheless agree with our sister circuits that the statutory definition of finality in 8 U.S.C. § 1101(a)(47) controls and trumps the regulatory definition in 8 C.F.R. § 1241.1(f). *See Chevron*, 467 U.S. at 843 n.9 (stating that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent"). 8 U.S.C. § 1101 defines terms used in the INA and applies to 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1101(a) (defining terms "[a]s used in this chapter," which includes 8 U.S.C. § 1229a). It therefore applies to 8 U.S.C. § 1229a(c)(7)(C)(i), which sets forth the requirement that a motion to reopen be filed within 90 days of a "final administrative order of removal."

**[6]** 8 U.S.C. § 1101(a)(47) defines "order of deportation" and when such orders become final. In *Singh v. Gonzales*, the court made clear that this definition also applies to an "order of removal." 499 F.3d 969, 979 (9th Cir. 2007). *Accord Molina-Camacho v. Ashcroft*, 393 F.3d 937, 940 (9th Cir. 2004) (stating that "[t]he Government concedes that 8 U.S.C. § 1101(a)(47)(A), which defines 'order of deportation,' now applies to orders of removal as well"), *overruled on other grounds by Lolong v. Gonzales*, 484 F.3d 1173 (9th Cir. 2007) (en banc). 8 U.S.C. § 1101(a)(47)(B) mandates that an order of removal "shall become final upon the earlier of — (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." The statute is clear and unambiguous that removal orders become final only in these two cir-

cumstances, so there is no need to resort to 8 C.F.R. § 1241.1(f) for clarification. Furthermore, we previously stated that "[a] regulation may not serve to amend a statute, nor add to the statute something which is not there." *California Cosmetology Coal. v. Riley*, 110 F.3d 1454, 1460 (9th Cir. 1997) (internal citation and quotation marks omitted). Applying 8 C.F.R. § 1241.1(f)'s provision regarding overstay of the voluntary departure period would violate this precept by effectively amending 8 U.S.C. § 1101(a)(47)(B) to afford an additional circumstance when removal orders become final that is not expressed in the statute.

Our holding that the definition in 8 U.S.C. § 1101(a)(47) governs when a removal order becomes final is consistent with the court's prior decision in *Alali-Amin v. Mukasey*, 523 F.3d 1039 (9th Cir. 2008). The petitioner in *Alali-Amin* advanced a similar argument that his motion to reopen was improperly denied as untimely because no "final" order of removal had been entered. *Id.* at 1041. In *Alali-Amin*, the IJ ordered the petitioner's deportation but then deferred removal pursuant to the CAT. *Id.* Like Ccayhuari, the petitioner in *Alali-Amin* moved to reopen his removal proceeding so he could seek an adjustment of status after marrying a United States citizen. *Id.* The petitioner in *Alali-Amin* also asserted that his motion to reopen was timely and that no "final" removal order was ever entered because the IJ deferred his removal. *Id.* The IJ denied the motion to reopen as untimely and the BIA affirmed that decision. *Id.* On review, the court rejected the petitioner's argument that no final removal order had ever issued and concluded that, pursuant to 8 U.S.C. § 1101(a)(47), "[p]etitioner's argument [was] foreclosed by the statutory definition of an 'order of deportation' and the accompanying provision regarding the finality of such an order." *Id.*

Finally, during oral arguments Ccayhuari cited *Diouf v. Mukasey* to support the proposition that 8 C.F.R. § 1241.1(f) defines the finality of removal orders so any other conclusion

today would be incompatible. 542 F.3d 1222 (9th Cir. 2008). To the contrary, *Diouf* is easily distinguished. In *Diouf*, the court reviewed an alien's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 based on the length of his detention pending deportation. 542 F.3d at 1224-25. The *Diouf* court stated, "Because the IJ issued an alternate order of removal in connection with the grant of voluntary departure, and Diouf did not timely appeal to the BIA, Diouf's order of removal became administratively final 'upon overstay of the voluntary departure period.' " *Id.* at 1229. The court engaged in this analysis solely to determine whether the defendant was being detained in accordance with 8 U.S.C. §§ 1226 or 1231, both of which address, among other things, when an alien may be detained or physically removed from the United States, which obviously would not occur until after the voluntary departure period expired. *Id.* Consequently, the court's analysis in *Diouf* is not relevant to whether a removal order is "final" for the purpose of determining whether a motion to reopen was timely. Furthermore, in *Diouf* the defendant had overstayed his voluntary departure period *and* failed to timely appeal the IJ's removal order to the BIA, so there would have been no question whether his removal order was "final"— regardless of whether 8 C.F.R. § 1241.1(f) or 8 U.S.C. § 1101(a)(47) applied. Because timeliness was not at issue in *Diouf*, and the court was not confronted with the question of whether 8 C.F.R. § 1241.1(f) conflicted in any way with the statutory definition of finality found in 8 U.S.C. 1101(a)(47), that decision does not compel a result different from the one we reach today.

## IV

**[7]** For the foregoing reasons, we hold that the BIA did not err by denying as untimely Ccayhuari's petition to reopen his removal proceedings. 8 U.S.C. § 1229a(c)(7)(C)(i) requires that a motion to reopen be filed within 90 days of a final order of removal. 8 U.S.C. § 1101(a)(47)(B) mandates that an order of removal becomes final upon the earlier of (i) a BIA deter-

mination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order. Accordingly, Ccayhuari should have filed his motion to reopen within 90 days of the BIA's November 12, 2002, order summarily affirming the IJ's determination that Ccayhuari was removable and ordering his removal if he failed to voluntarily depart within 30 days of the date of the order. Because Ccayhuari filed his motion to reopen on February 17, 2006, nearly four years after the order of removal became final, the BIA correctly determined that it was untimely.

**PETITION FOR REVIEW DENIED.**