BERZON, Circuit Judge,
concurring:
I join, the per curiam opinion, as I entirely agree that George Camacho Garcia’s appeal waiver was invalid because his conviction was not an aggravated felony. I *797 write separately to explain an additional, more fundamental problem with the Board of Immigration Appeal’s (“BIA”) decisions in this case: In my view, the regulation upon which the BIA relied for its conclusion that it lacked jurisdiction is flatly inconsistent with the Immigration and Nationality Act (“INA”).
Routinely, when an Immigration Judge (“IJ”) renders a decision, he asks the respondent and the Department of Homeland Security (“DHS”) to decide, then and there, whether to reserve or waive the right to appeal. See In re Rodriguez-Diaz, 22 I. & N. Dec. 1320, 1323 n. 2 (BIA 2000) (advising IJs to inform respondents: “If you want to appeal my decision, or if you want to think about appeal and decide later, you must reserve appeal now.”). If the parties both waive appeal, and the waiver is otherwise valid, then, the BIA maintains, it “do[es] not have jurisdiction over the decision of [the] Immigration Judge.” Id. at 1322 (citing Matter of Shih, 20 I. & N. Dec. 697 (BIA 1993)).[1] That is so, the BIA says, because “[w]henever the right to appeal is [validly] waived, the decision of the Immigration Judge becomes final and may be implemented immediately.” Id.; see also Shih, 20 I. & N. Dec. at 699 (holding that, “[b]ecause the immigration judge’s decision is final [upon appeal waiver], the applicant’s subsequent attempt to withdraw his waiver by filing a Notice of Appeal ... has no effect” and the BIA therefore “lacks jurisdiction to adjudicate the case.”).[2]
To establish that an IJ’s decision is final once appeal has been validly waived, both Rodriguez-Diaz and Shih cited to former regulations to that effect. The regulations have been reorganized since then, but the current regulations say the same thing: *798 An IJ’s decision “becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken[,] whichever occurs first.” 8 C.F.R. § 1003.39 (2014); see also 8 C.F.R. § 1241.1(b) (2014) (one of several conditions upon which an order of removal becomes final is “waiver of appeal by the respondent”).[3]
In this case, the BIA concluded that it had no jurisdiction because Garcia validly waived appeal. “[T]he Immigration Judge’s decision became administratively final upon the respondent’s waiver of the right to appeal,” the BIA held, and so the case was “not properly before” it. It cited section 1003.39, Rodriguez-Diaz and Shih.[4] The BIA reaffirmed its conclusion that it lacked jurisdiction in its decision denying the motion to reconsider.
The problem with this reasoning — aside from the invalidity of the waiver, for the reasons covered in the per curiam opinion — is that the regulation governing finality, 8 C.F.R. § 1003.39, on which the BIA relied, is flatly inconsistent with the INA, the governing statute.[5] 8 U.S.C. § 1101(a)(47)(B) provides that an “order of deportation” “shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.” Id. The definition also applies to an order of removal, such as the one at issue in this case. See Ocampo v. Holder, 629 F.3d 923, 927 (9th Cir.2010) (citing Singh v. Gonzales, 499 F.3d 969, 979 (9th Cir.2007)). So, according to the INA’s terms, there are two events which can trigger the finality of a removal order — a BIA affirmance or the running of the appeal period. The waiver of the right to appeal is not mentioned as triggering finality.
Ocampo held 8 C.F.R. § 1241.1(f), which provides for the finality, under several circumstances, of an alternate removal order issued in connection with a grant of volun *799 tary departure, to be inconsistent with section 1101(a)(47)(B) and therefore invalid.[6] The statutory definition of finality, we said, was “clear and unambiguous that removal orders become final only in these two circumstances, so there [wa]s no need to resort to” a regulation providing a third alternative “for clarification.” Ocampo, 629 F.3d at 927. Applying the regulation’s third alternative to trigger finality in the face of the statutory definition would, Ocampo held, violate the rule that “ ‘[a] regulation may not serve to amend a statute, nor add to the statute something which is not there,’ ” by “effectively amending 8 U.S.C. § 1101(a)(47)(B) to afford an additional circumstance when removal orders become final that is not expressed in the statute.” Id. (quoting Cal. Cosmetology Coal. v. Riley, 110 F.3d 1454, 1460 (9th Cir.1997)).
As noted above, one of the other subsections of that same regulation, 8 C.F.R. § 1241.1(b), provides that a removal order becomes final “[u]pon waiver of appeal by the respondent.” Id. The BIA in this case relied on the equivalent language of 8 C.F.R. § 1003.39, which provides that “the decision of the Immigration Judge becomes final upon waiver of appeal.” Id. Ocampo’s reasoning applies equally to each of these provisions. Each is inconsistent with the “clear and unambiguous” statutory definition of finality, Ocampo, 629 F.3d at 927, as each adds a finality trigger that does not appear in the statute.
Congress, I recognize, did not specify in what “period” a noncitizen would be “permitted to seek review.” 8 U.S.C. § 1101(a)(47)(B)(ii). But the statutory provision unambiguously refers to some “period,” that is, some time span with ascertainable starting and ending dates. Consistent with the express congressional directive to “issue regulations with respect to ... the time period for the filing of administrative appeals in deportation proceedings,” Immigration Act of 1990, Pub.L. No. 101-649, § 545(d)(2), 104 Stat. 4978, 5066 (1990) (emphasis added), the regulations provide that the notice of appeal must be filed within 30 days from the issuance of the IJ’s decision. 8 C.F.R. § 1003.38(b). In other words, the “period in which the alien is permitted to seek review,” 8 U.S.C. § 1101(a)(47)(B)(ii), is defined by the regulation: 30 days. At the expiration of that period, not earlier, the order becomes final unless there has been an appeal.
DHS maintains before us that the term “is permitted” in the statute is sufficiently ambiguous to admit of the regulatory provision for finality upon waiver of appeal, or failure to reserve appeal, immediately after the IJ’s decision is announced. I discern no such ambiguity. The statute requires that there be some period of time “permitted” in which a noncitizen may seek review before the BIA. There is no reasonable construction of the statutory language allowing a noncitizen no time to seek review, but instead asking him to declare his intention regarding appeal immediately upon issuance of the IJ’s opinion.
DHS also argues that 8 U.S.C. § 1101(a)(47) simply speaks to a different *800 question than do the regulations — namely, finality for the purposes of judicial review, rather than finality for the purposes of appeal to the BIA. It points out that this statutory subsection was added as part of section 440 of the Antiterrorism and Effective Death Penalty Act of 1996. Section 440(a) precludes judicial review of “[a]ny final order of deportation” based on certain criminal offenses, and is immediately followed by section 440(b), which provides the definition of “final order of deportation” codified at 8 U.S.C. § 1101(a)(47). Pub.L. No. 104-32, 110 Stat. 1214. This statutory context, the government contends, indicates that Congress defined finality only for purposes of judicial review.
Contrary to DHS’s inventive argument, however, we have applied the statutory definition of finality outside the context of judicial review. See Ocampo, 629 F.3d at 926-27; Alali-Amin v. Mukasey, 523 F.3d 1039, 1041-42 (9th Cir.2008). Ocampo, for example, applied the definition to the question whether a motion to reopen was timely filed with the BIA; finality for the'' purposes of judicial review was not at issue in that case. See Ocampo, 629 F.3d at 926-27.
I recognize that holding the regulation at issue here invalid would have some troubling implications: A detained noncitizen who really does wish to waive appeal so he can be removed as soon as possible may instead be required to remain in detention for 30 days until the time to appeal has expired. See 8 U.S.C. § 1231(a)(1) (DHS shall remove a noncitizen who has been ordered removed with the “removal period,” which begins, as relevant here, when “the order of removal becomes administratively final”); but see 8 C.F.R. § 241.7 (DHS may “permit an alien ordered removed ... to depart at his or her own expense to a destination of his or her own choice.”).
But there are countervailing considerations as well. Most notably, the appeal waiver system in immigration court raises some troubling due process concerns. Noncitizens — often unrepresented — are asked during the course of the hearing to make a binding decision whether to pursue an appeal. This in-the-moment procedure is not at all how appeal waivers are obtained in other contexts. In federal criminal cases, for example, this court has permitted appeal waivers as part of plea bargains in reliance, in part, on the defendant having sufficient time to consider the matter. See, e.g., United States v. Morris, 633 F.3d 885, 888-89 (9th Cir.2011) (holding that the government’s “take it or leave it plea offer,” including a plea waiver, did not violate due process because the defendant had “several weeks to consider the offer,” and this “timeframe [was] not problematic”).
It may well be that due process requires time to think and consult with counsel before appeal rights can be validly waived. Indeed, the Supreme Court has indicated that such waivers must be “considered.” United States v. Mendoza-Lopez, 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). This case illustrates the importance of such time to think and consult. Garcia consistently sought to challenge the basis of his removal proceedings, asking for time to obtain an attorney, filing written pleadings including legal arguments that his conviction was not an aggravated felony, and, ultimately, filing an appeal. Although the record suggests that he understood the choice before him regarding the appeal, there is good reason to think that he made a spur-of-the-moment decision, in the heat of an intimidating hearing at which he was told he had no hope for relief. It is most likely, given his actions before and after the hearing, that Garcia would not have made that decision had he *801 been afforded time to consider the choice in light of the IJ’s decision, and to consult counsel. Although, under our precedents, his waiver was not valid because of the IJ’s improper advice regarding relief, even had the advice been correct, I would be troubled by the pressure brought to bear upon him, an unrepresented individual, to make such a weighty decision without even a night to sleep on it.
Furthermore, again unlike appeal waivers in plea bargains, it is not clear there is any quid, pro quo for the type of waiver that was sought here. Unless the nonciti-zen is detained and seeking a swift removal, it is hard to see what he gets in return for his waiver. In federal criminal cases, by contrast, plea agreements, including appeal waivers, are “contractual in nature.” United States v. Jeronimo, 398 F.3d 1149, 1153 (9th Cir.2005), overruled on other grounds by United States v. Jacobo Castillo, 496 F.3d 947, 957 (9th Cir.2007) (en banc).
Accepting Garcia’s argument that the regulations are inconsistent with the INA would avoid these constitutional concerns. The due process concerns might also be addressed by adding some protections to the waiver process, including some lapse of time from the IJ’s decision, accompanied by advice to consult counsel before deciding whether to waive appeal. With such additions to the waiver process, it is possible that, as a prudential, discretionary matter, the BIA could decline to consider an appeal because of a waiver. But whether the BIA could, with such protections, be permitted to choose not to hear an appeal is a very different question from whether it is barred from doing so, as the BIA held in -this case. Cf. Singh v. Holder, 771 F.3d 647, 653 (9th Cir.2014).
In sum, I would hold, in the alternative, that, even if Garcia’s waiver of appeal were otherwise valid, that waiver would not render Garcia’s removal order final. For that reason as well, the BIA abused its discretion in not reconsidering its holding that it lacked jurisdiction over this case.

. As the per curiam opinion notes, the BIA does require that “any waiver be knowingly and intelligently made.” Rodriguez-Diaz, 22 I. & N. Dec. at 1322.

. Aside from the concerns discussed in the text, it is dubious whether the appeal-waiver rule properly goes to the BIA's jurisdiction for two reasons. First, the Supreme Court has rejected "a reflexive extension to agencies of the very real division between the jurisdictional and nonjurisdictional that is applicable to courts." City of Arlington, Tex. v. F.C.C., - U.S. -, 133 S.Ct. 1863, 1868, - L.Ed.2d-(2013). The analogy to the jurisdiction of courts — that is, to "the question whether [a court has] the power to decide at all,” id. (emphasis omitted) — is particularly inapt where, as here, the agency disclaims authority based only on its own regulation. “Rules of jurisdiction in a sense speak from a position outside the court system and prescribe the authority of the courts within the system.” Black’s Law Dictionary 980 (10th ed.2014) (quoting Fleming James Jr., Geoffrey C. Hazard Jr. & John Leubsdorf, Civil Procedure § 2.1, at 55 (5th ed.2001)) (internal quotation mark omitted). By contrast, a BIA . regulation, at least one that does not purport to interpret a statute, is, in effect, the Attorney General telling himself what he may or may not do; presumably, he could simply change the rules if he were so inclined. That being the case, such regulations are more like a court's internal rules, such as our own standing orders, than external constraints that could properly be conceived of as jurisdictional.
Second, even if a regulation could be jurisdictional, the appeal-waiver rule would not so qualify. See Irigoyen-Briones v. Holder, 644 F.3d 943, 949 (9th Cir.2011) (holding that the 30-day deadline to file a notice of appeal with the BIA was not jurisdictional). The Supreme Court has "urged that a rule should not be referred to as jurisdictional unless it governs a court’s adjudicatory capacity, that is, its subject-matter or personal jurisdiction.” Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011). “Among the types of rules that should not be described as jurisdictional are ... ‘claim-processing rules' ... that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.” Id. at 1203. A requirement that parties must affirmatively reserve appeal at the hearing is a "quintessential claim-processing rule[].” Id.

. Rodriguez-Diaz and Shih relied principally on 8 C.F.R. § 3.39 (2000 and 1993, respectively). Current 8 C.F.R. § 1003.39 (2014) contains identical language.

. The BIA also cited the last sentence of 8 C.F.R. § 1003.3(a)(1), which provides that "[a] Notice of Appeal may not be filed by any party who has waived appeal pursuant to § 1003.39.”

. We have jurisdiction to consider Garcia’s argument on this point. Unlike in Stone v. I.N.S., 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995), Garcia is not asking us to reverse or vacate the earlier decision, as to which he did not petition for review. Instead, he petitioned for review of, and directly challenges, only the denial of his motion to reconsider. The BIA’s original jurisdictional holding was the necessary predicate to its opinion denying the motion to reconsider. "A motion to reconsider necessarily reaches the prior decision because it must specify the errors of fact or law in the prior Board decision.” Toufighi v. Mukasey, 538 F.3d 988, 996 (9th Cir.2008) (alteration and internal quotation marks omitted). "[A] petitioner who only seeks review of a BIA order on reconsideration foregoes any more favorable standard of review that might have applied had the petitioner sought review of the BIA’s underlying decision on the merits,” but "without some appraisal of the underlying merits, it would not be possible for an appellate court to evaluate whether the BIA abused its discretion in denying a motion to reconsider the merits.” Castro v. Attorney Gen. of U.S., 671 F.3d 356, 364-65 (3d Cir.2012); see also Narine v. Holder, 559 F.3d 246, 251 (4th Cir.2009); Esenwah v. Ashcroft, 378 F.3d 763, 764 (8th Cir.2004). Moreover, although Garcia did not exhaust his challenge to the appeal-waiver regulation, "[bjecause the BIA has no authority to declare a regulation invalid, ‘the exhaustion doctrine does not bar review of a question concerning the validity of [a governing] regulation because of a conflict with a statute.’ ” Coyt v. Holder, 593 F.3d 902, 905 (9th Cir.2010) (quoting Espinoza-Gutierrez v. Smith, 94 F.3d 1270, 1273-74 (9th Cir.1996)).

. 8 C.F.R. § 1241.1 provides, in relevant part: "An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final ... (f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. If the respondent has filed a timely appeal with the Board, the order shall become final upon an order of removal by the Board or the Attorney. General, or upon overstay of the voluntary departure period granted or reinstated by the Board or the Attorney General.”