**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE CAMACHO GARCIA, *Petitioner*, | No. 11-73406 |
| v. | Agency No. A070-066-192 |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 11, 2015—San Francisco, California

Filed May 20, 2015

Before: Michael Daly Hawkins, Richard A. Paez,
and Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Berzon

## SUMMARY[*]

### Immigration

The panel granted George Camacho Garcia's petition for review from the Board of Immigration Appeals' decision denying his motion for reconsideration for lack of jurisdiction on the ground that he validly waived appeal.

The panel held that Garcia's waiver of his right to appeal to the BIA was not considered and intelligent, because his decision was based upon an Immigration Judge's incorrect advice that his prior conviction was an aggravated felony and that he was therefore ineligible for relief from removal. The panel held that Garcia's conviction for grand theft, in violation of California Penal Code § 487(a), is not a categorical aggravated felony because it is doubly overbroad, where it permits a conviction for theft of labor, while the generic definition of theft does not, and it also permits a conviction for a consensual taking.

Concurring, Judge Berzon agreed that Garcia's appeal waiver was invalid because his conviction was not an aggravated felony, but wrote separately to explain that the BIA made a more fundamental error in concluding that it lacked jurisdiction. Judge Berzon wrote that the regulation governing finality upon which the BIA relied, 8 C.F.R. § 1003.39, is flatly inconsistent with the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(47)(B), which provides that a deportation order is final when the BIA affirms it or the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

appeal period has expired, and further noted that the waiver of the right to appeal is not mentioned as triggering finality. Judge Berzon would hold that even if Garcia's waiver of appeal were otherwise valid it would not render his removal order final.

## COUNSEL

K. Lee Hartzler, San Diego, California, for Petitioner.

Manuel Palau and Sara Bayram (argued), Department of Justice, Civil Division, Office of Immigration Limitation, Washington, D.C., for Respondent.

## OPINION

PER CURIAM:

An Immigration Judge ("IJ") incorrectly advised George Camacho Garcia that his prior conviction was for an aggravated felony, and that he was therefore ineligible for relief from removal. Hearing that advice, Garcia waived his appeal to the Board of Immigration Appeals ("BIA"). But the advice was wrong. As a result, Garcia's waiver of his right to appeal to the BIA was not considered and intelligent, and the BIA should have granted Garcia's motion for reconsideration.

I.

Garcia, a native and citizen of the Philippines, became a lawful permanent resident in 2004 based on his marriage to

a U.S. citizen. In 2009, he pleaded guilty to four charges in California state court, including a violation of California Penal Code § 487(a), and was duly convicted. The corresponding count in the complaint alleged that: "George Camacho Garcia did willfully and unlawfully take money or personal property of a value exceeding four hundred dollars ($400)." Garcia was sentenced to one year and four months in prison for that conviction.

In 2011, the Department of Homeland Security ("DHS") issued a notice to appear, charging Garcia with removability as an alien convicted of an aggravated felony – specifically a theft offense for which a sentence of at least one year was imposed. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii); 1101(a)(43)(G). During an initial hearing, Garcia heard a pre-recorded message explaining the removal process, his appellate rights, and his option to waive appeal. In an ensuing individual colloquy with the IJ, Garcia said that he wished to proceed in English, which was his "best language," that he understood his rights, and that he wanted time to obtain a lawyer. The hearing was continued. At a subsequent hearing, Garcia told the IJ he would proceed pro se and again confirmed that English was his best language. Garcia had some difficulty hearing the IJ, who asked Garcia to sit closer so he could hear.

At the second hearing, Garcia filed written pleadings prepared with the assistance of his current counsel, arguing that he was not removable because his section 487(a) conviction was not a categorical aggravated felony. Specifically, he maintained that section 487(a) was overbroad in two ways: It criminalized both theft of labor and also forms of consensual but unlawful taking of property, such as false pretenses, neither of which is included in the generic

definition of theft. After DHS filed copies of the abstract of judgment and complaint from his criminal case, the IJ concluded that Garcia's section 487(a) conviction was an aggravated felony. Looking to the complaint, the IJ held that the conviction was for "taking the money or personal property as such," rather than theft of labor, but did not address Garcia's argument regarding consensual but unlawful taking of property. Garcia was ordered removed.

The IJ then explained that Garcia, who remained unrepresented, had the right to appeal but could waive that right. Garcia said he understood. When asked if he waived appeal, Garcia responded: "I would say – so I am not eligible for any relief?" The IJ told him he was not, explaining that, despite Garcia's marriage to a U.S. citizen, he would need a waiver to adjust his status again, but, given his conviction, he was ineligible for any waiver. The IJ then again confirmed that Garcia understood his options regarding appeal. Garcia said he did, and then stated – three times – that he agreed to waive his right to appeal.[1]

Garcia nevertheless filed a pro se notice of appeal with the BIA, attaching, as his statement of reasons, a copy of his previously filed written pleadings and an argument that his conviction was not an aggravated felony. The BIA dismissed the appeal, noting that Garcia had waived it and holding that, as Garcia had "made no argument that the decision to waive appeal was not a knowing and intelligent one," the IJ's decision was administratively final upon waiver. The case thus was "not properly before" it, the BIA asserted.

---

[1] In response to the IJ's questioning to ensure Garcia really intended to waive appeal, Garcia stated "I will not appeal no more," "I just voluntarily deporting myself," and "I'm waiving my right to an appeal."

Garcia, now represented by counsel, filed a short motion to reconsider, arguing that "at the time he waived appeal, he was confused, had a difficult time hearing the immigration judge, and did not make a knowing, intelligent, and voluntary waiver of his right to appeal."**²**    In an accompanying declaration, Garcia stated that he was scared and confused during the hearing, English was not his first language, and he had a hard time hearing the IJ.  He also said that he did not believe his conviction was categorically an aggravated felony, and that he would therefore like to argue for his eligibility for cancellation of removal.

The BIA issued an opinion declining to grant reconsideration.  It noted that, although it ordinarily does not have jurisdiction over motions when it has not assumed initial jurisdiction over a case, it would consider the motion to reconsider because it "challenge[d] the jurisdictional determination in this case."  The BIA went on to reject as inconsistent with the record the assertions in Garcia's declaration regarding the circumstances of the hearing, noting: that he had told the IJ that he wanted to proceed in English, as it was his best language; that the IJ had explained Garcia's appellate rights to him; that Garcia had confirmed he had listened and understood; that the IJ had told Garcia to sit closer to address his hearing difficulty; and that, at the end of the proceeding, Garcia had unequivocally stated his intent to waive appeal.  The upshot, the BIA concluded, was this: "Despite the respondent's generalized assertions that he was in some manner 'confused' about his proceedings, . . . the record reflects that he understood he had a right to appeal, but made a knowing and voluntary waiver of this right."

---

**²** Garcia styled his filing a motion to reopen, but the BIA construed it as a motion to reconsider.  Neither party challenges that construction.

Whether the IJ had given proper advice when he advised Garcia that he was ineligible for relief from removal because of his theft conviction was not addressed in the BIA opinion.

Garcia timely petitioned for review of the BIA reconsideration decision.

II.

We review the denial of a motion to reconsider for abuse of discretion. *Tadevosyan v. Holder*, 743 F.3d 1250, 1252 (9th Cir. 2014). We will reverse such a denial "if it is arbitrary, irrational, or contrary to law." *Yepremyan v. Holder*, 614 F.3d 1042, 1044 (9th Cir. 2010) (quoting *Singh v. I.N.S.*, 295 F.3d 1037, 1039 (9th Cir. 2002)) (internal quotation marks omitted).

The BIA has held that, once the parties waive appeal, it lacks jurisdiction if the waiver is "knowingly and intelligently made." *In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322 (BIA 2000) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987)).[3] As DHS recognizes, it bears the burden to establish a valid waiver by clear and convincing evidence. *See Gomez*, 757 F.3d at 893–94.

"Where 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the IJ

---

[3] We note that *Mendoza-Lopez* indicated that an appeal waiver must be "*considered* [and] intelligent" in order to satisfy due process. *Mendoza-Lopez*, 481 U.S. at 840 (emphasis added); *see also, e.g.*, *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014). In light of our disposition of this case, we do not address whether this standard is meaningfully different from the BIA's articulation.

fails to 'advise the alien of this possibility and give him the opportunity to develop the issue,' we do not [regard] an alien's waiver of his right to appeal his deportation order [as] 'considered and intelligent.'"     *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) (quoting *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001)) (some internal quotation marks omitted).  In this case, the IJ advised Garcia that he was not eligible for any relief because his grand theft conviction was an aggravated felony.[4] That advice was incorrect.

As an initial matter, Garcia did sufficiently exhaust this argument.   We are generally barred, "for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). However, "[w]e do not employ the exhaustion doctrine in a formalistic manner."  *Ren v. Holder*, 648 F.3d 1079, 1083 (9th Cir. 2011) (quoting *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008)) (internal quotation marks omitted).  "'A petitioner cannot satisfy the exhaustion requirement by making a general challenge to the IJ's decision,'" but also "need not . . . raise the *precise* argument below." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008) (quoting *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004)).

---

[4] The IJ's determination that Garcia's conviction was an aggravated felony played a role in two distinct issues that arose at the hearing.  It was the basis for the charge of removability which the IJ sustained, and it also indicated to the IJ that Garcia was not eligible for relief from removal. Only the latter issue is before us on this petition for review.

Here, Garcia's brief motion to reconsider and accompanying declaration argued that Garcia "did not make a knowing, intelligent, and voluntary waiver of his right to appeal," reiterated the argument made before the IJ and in the notice of appeal that the conviction was not an aggravated felony, and asserted that, therefore, Garcia was potentially eligible for relief from removal. Garcia did not spell out in so many words that his waiver should be deemed invalid *because* the IJ incorrectly concluded that his conviction was an aggravated felony and so failed to advise him of potential relief from removal. But Garcia did articulate each essential part of the contention he now raises. As a result, that "issue was before the BIA such that it had the opportunity to correct its error." *Figueroa*, 543 F.3d at 492. "Our precedent requires nothing more." *Id*. (brackets and internal quotation marks omitted).

Garcia's declaration indicated that, absent an aggravated felony, he was potentially eligible for cancellation of removal, 8 U.S.C. § 1229b, while on appeal Garcia has argued that, absent an aggravated felony, he was potentially eligible to readjust his status with an 8 U.S.C. § 1182(h)(1)(B) waiver. But that difference is immaterial for present purposes. DHS has made no argument, apart from its contention that his conviction was an aggravated felony, as to the merits of *either* form of relief, nor has it suggested that the difference between them should matter for exhaustion purposes. Indeed, Garcia may have been eligible for both.[5]

---

[5] Nothing in the record before the IJ negates Garcia's apparent eligibility, absent an aggravated felony, for both forms of relief from removal. *See United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010) (en banc) (holding that apparent eligibility exists where the record "raises a reasonable possibility that the petitioner may be eligible

In sum, Garcia sufficiently exhausted the issue we decide: that his waiver was invalid because the IJ incorrectly advised him that his conviction was an aggravated felony and that, for that reason, he was ineligible for relief from removal.

On the merits, we agree with Garcia that his conviction was not an aggravated felony. "In making a determination as

for relief") (internal quotation mark omitted). Garcia would have been eligible for cancellation of removal upon a showing that he "(1) ha[d] been an alien lawfully admitted for permanent residence for not less than 5 years, [and] (2) ha[d] resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a). At the time of his removal proceedings, Garcia had been a permanent resident for well over five years. *See Padilla-Romero v. Holder*, 611 F.3d 1011, 1012, 1014 (9th Cir. 2010). Although the record is somewhat unclear on this point, it appears that Garcia had also continuously resided in the United States for seven years prior to committing the offense for which he was held removable, *see* 8 U.S.C. § 1229b(d)(1), having been admitted in a nonimmigrant status as early as 1996. Similarly, Garcia was apparently eligible for a waiver under § 1182(h)(1)(B) in conjunction with an application to adjust his status again. *See Matter of Rivas*, 26 I. & N. Dec. 130, 132–33 (BIA 2013). For the § 1182(h)(1)(B) waiver, Garcia would need to show "extreme hardship to [his] United States citizen or lawfully resident spouse, parent, son, or daughter." 8 U.S.C. § 1182(h)(1)(B). The record indicates that Garcia was, at least at one point, married to a U.S. citizen, but the IJ did not further develop the record as to the status of Garcia's relationship or any potential extreme hardship, because of his conclusion that Garcia had been convicted of an aggravated felony. *Cf. United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). Finally, Garcia was apparently eligible to again adjust his status, assuming that he was, indeed, still married to the U.S. citizen. *See In re Mendez-Moralez*, 21 I. & N. Dec. 296, 297-98 (BIA 1996); *Agyeman v. I.N.S.*, 296 F.3d 871, 878 (9th Cir. 2002). Insofar as there are gaps in the record regarding Garcia's eligibility for relief, the evident reason is that the IJ truncated any inquiry into Garcia's precise circumstances by ruling that, whatever those circumstances were, Garcia had been convicted of an aggravated felony and so was ineligible for relief.

to whether a prior conviction qualifies as an aggravated felony for federal deportation purposes, we employ the analytical model set forth in *Taylor v. United States*, 495 U.S. 575 [(1990)]." *Pallares-Galan*, 359 F.3d at 1099.

> Under *Taylor*'s categorical approach, the issue is not whether the actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by the state statute constitutes an aggravated felony, and we look only to the fact of conviction and the statutory definition of the prior offense to make this determination. If we determine that the statute which the defendant was found to have violated is broader in scope than the federal provision—that the state statute proscribes not only conduct that would constitute an aggravated felony but also conduct that would not—then the state conviction may not be used, except under a modified categorical approach. Under the modified categorical approach, the conviction may be used only if the record contains documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction.

*Id.* (brackets, citations, and internal quotation marks omitted).

As was clear at the time of Garcia's hearing, a conviction under California Penal Code § 487(a) is not categorically an aggravated felony because, as Garcia argues, section 487(a)

is doubly overbroad.[6]  First, it permits a conviction for theft of labor, while the generic definition of theft does not.  *See United States v. Espinoza-Cano*, 456 F.3d 1126, 1131 (9th Cir. 2006).  Second, section 487(a) incorporates the general definition of theft, which is found at California Penal Code § 484(a).[7]  An individual may be convicted of theft under section 484(a), and therefore grand theft under section 487(a), even if the victim consented to transfer his property.  For example, the California statutes cover deprivation of property by false pretenses, which does not constitute theft under the generic definition.  *See Carrillo-Jaime v. Holder*, 572 F.3d 747, 751–53 (9th Cir. 2009).  Under that definition, theft is "[1] a taking of property or an exercise of control over

---

[6] The version of the statute in effect at the time of Garcia's conviction provided, in relevant part, "Grand theft is theft committed in any of the following cases: (a) When the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400) . . ."  Cal. Penal Code § 487 (2009).  The statute has since been amended to raise the value establishing grand theft to $950.  *See* Cal. Penal Code § 487(a) (2014).

[7] "[Section] 484(a) defines theft in general," while "[s]ection 487 . . . describes certain circumstances in which theft will constitute grand theft." *United States v. Corona-Sanchez*, 291 F.3d 1201, 1206–07 (9th Cir. 2002) (en banc), *superseded by statute on other grounds as recognized in United States v. Gomez-Mendez*, 486 F.3d 599, 604–05 (9th Cir. 2007) (footnote omitted).  Section 484(a) provides, in relevant part, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."  Cal. Penal Code § 484(a).

property [2] *without consent* [3] with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Id*. at 750 (alterations in original) (emphasis added) (quoting *Corona-Sanchez*, 291 F.3d at 1205) (internal quotation marks omitted).

The IJ nevertheless found that the conviction was an aggravated felony, applying the modified categorical approach. In doing so, he addressed only the first type of overbreadth, not whether the conviction was for a consensual or non-consensual taking.

The modified categorical approach does not establish that Garcia was convicted of a non-consensual taking. "In the context of a guilty plea, the modified categorical approach inquires whether a guilty plea to an offense defined by a nongeneric statute *necessarily admitted* elements of the generic offense." *Alvarado v. Holder*, 759 F.3d 1121, 1130 (9th Cir. 2014) (internal quotation marks omitted). Nothing in the conviction documents in the record – namely, the abstract of judgment and criminal complaint – establishes that Garcia's conviction was for non-consensual grand theft.[8]

The complaint charged that Garcia "did willfully and unlawfully take money or personal property." As the California Supreme Court recently reiterated, in 1927 the California legislature consolidated the crimes previously known as larceny, false pretenses, and embezzlement,

---

[8] As the question of divisibility was not raised in the briefs and oral argument, and because we reverse on other grounds, we assume for the purposes of this opinion, without deciding, that sections 487(a) and 484(a) are divisible. *See Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014).

inherited from English common and statutory law, into what is now section 484(a). *People v. Williams*, 57 Cal. 4th 776, 785 (2013). One distinction among these crimes was that larceny required "a 'trespassory taking,' which is a taking without the property owner's consent," while false pretenses, for example, "involves the consensual transfer of possession as well as title of property." *Id.* at 788 (emphases omitted); *see also Carrillo-Jaime*, 572 F.3d at 752. This change affected the wording of charging documents:

> "The purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law. *Indictments and informations charging the crime of 'theft' can now simply allege an 'unlawful taking.'* . . . Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved. . . . The elements of the several types of theft included within section 484 have not been changed, however, and a judgment of conviction of theft, based on a general verdict of guilty, can be sustained only if the evidence discloses the elements of one of the consolidated offenses."

*Williams*, 57 Cal. 4th at 785–86 (emphasis added) (quoting *People v. Ashley*, 42 Cal. 2d 246, 258 (1954)). In other words, the allegation in the complaint in this case, that Garcia did "unlawfully take" property, charges theft in violation of section 484(a), without further indicating which of "the several types of theft" is specifically charged. *Id.* Thus, the

allegations in the complaint do not establish that Garcia was charged and convicted of non-consensual theft, namely larceny, rather than consensual but unlawful taking of property, such as by false pretenses.

*United States v. Rivera*, 658 F.3d 1073 (9th Cir. 2011), is not to the contrary.   In *Rivera*, we concluded that the defendant's plea to a charge that he "did unlawfully . . . steal take and carry away" personal property narrowed the conviction to the generic limits, namely a non-consensual taking.  *Id*. at 1077–78.  Although the charge in *Rivera* did not expressly indicate that the theft was non-consensual, its language closely tracked the portion of section 484(a) that "reflects" the common-law crime of larceny: "the felonious stealing, taking, carrying, leading, or driving away of the personal property of another."   *Williams*, 57 Cal. 4th at 781–82.   Here, by contrast, the charging language is fully consistent with non-consensual theories of guilt under section 484(a).  *See id*. at 785–86.

DHS points to language in a different count of the complaint, of which Garcia was not convicted, charging Garcia with using the same victim's personally identifying information without her authorization.   The most likely reading of the complaint, DHS suggests, is that the two counts are based upon the same conduct and that, therefore, the theft was without consent.   That possible inference, however, is insufficient to establish that Garcia was convicted of generic theft.  *Alvarado*, 759 F.3d at 1131.

For one thing, the taking of different property from the same victim could be covered in a single complaint.  For another, Garcia was not convicted of the "without authorization" count, a circumstance that could indicate he

was unwilling to plead guilty to taking the property without authorization or that the prosecution was not confident it could prove that element. So, although one perhaps *could* infer that the two counts arose from the same conduct, such an inference is in no way compelled. As we held in *Alvarado*, 759 F.3d at 1131, a bare inference of this sort does not satisfy the modified categorical approach.

In sum, the IJ "believed, incorrectly, that [Garcia's] conviction . . . constituted a[n] . . . aggravated felony," and so "erred when []he told [Garcia] that no relief was available" for that reason. *Pallares-Galan*, 359 F.3d at 1096. In light of the IJ's error, Garcia's "waiver of his right to appeal was not considered and intelligent." *Id*. (internal quotation marks omitted). It follows that the BIA's denial of the motion to reconsider was contrary to law and so an abuse of discretion. *Yepremyan*, 614 F.3d at 1044.[9]

**Petition GRANTED and REMANDED.**

---

BERZON, Circuit Judge, concurring:

I join the *per curiam* opinion, as I entirely agree that George Camacho Garcia's appeal waiver was invalid because his conviction was not an aggravated felony. I write separately to explain an additional, more fundamental problem with the Board of Immigration Appeal's ("BIA") decisions in this case: In my view, the regulation upon which the BIA relied for its conclusion that it lacked jurisdiction is

---

[9] Because we grant the petition on this basis, we do not reach Garcia's other contentions.

flatly inconsistent with the Immigration and Nationality Act ("INA").

Routinely, when an Immigration Judge ("IJ") renders a decision, he asks the respondent and the Department of Homeland Security ("DHS") to decide, then and there, whether to reserve or waive the right to appeal. *See In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1323 n.2 (BIA 2000) (advising IJs to inform respondents: "If you want to appeal my decision, or if you want to think about appeal and decide later, you must reserve appeal now."). If the parties both waive appeal, and the waiver is otherwise valid, then, the BIA maintains, it "do[es] not have jurisdiction over the decision of [the] Immigration Judge." *Id*. at 1322 (citing *Matter of Shih*, 20 I. & N. Dec. 697 (BIA 1993)).[1] That is so, the BIA says, because "[w]henever the right to appeal is [validly] waived, the decision of the Immigration Judge becomes final and may be implemented immediately." *Id*.; *see also Shih*, 20 I. & N. Dec. at 699 (holding that, "[b]ecause the immigration judge's decision is final [upon appeal waiver], the applicant's subsequent attempt to withdraw his waiver by filing a Notice of Appeal . . . has no effect" and the BIA therefore "lacks jurisdiction to adjudicate the case.").[2]

---

[1] As the *per curiam* opinion notes, the BIA does require that "any waiver be knowingly and intelligently made." *Rodriguez-Diaz*, 22 I. & N. Dec. at 1322.

[2] Aside from the concerns discussed in the text, it is dubious whether the appeal-waiver rule properly goes to the BIA's *jurisdiction* for two reasons. First, the Supreme Court has rejected "a reflexive extension to agencies of the very real division between the jurisdictional and nonjurisdictional that is applicable to courts." *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013). The analogy to the jurisdiction of *courts* – that is, to "the question whether [a court has] the power to decide at all," *id*.

To establish that an IJ's decision is final once appeal has been validly waived, both *Rodriguez-Diaz* and *Shih* cited to former regulations to that effect. The regulations have been reorganized since then, but the current regulations say the same thing: An IJ's decision "becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken[,] whichever occurs first." 8 C.F.R. § 1003.39 (2014); *see also* 8 C.F.R. § 1241.1(b) (2014) (one of several

---

(emphasis omitted) – is particularly inapt where, as here, the agency disclaims authority based only on its own regulation. "Rules of jurisdiction in a sense speak from a position outside the court system and prescribe the authority of the courts within the system." *Black's Law Dictionary* 980 (10th ed. 2014) (quoting Fleming James Jr., Geoffrey C. Hazard Jr. & John Leubsdorf, *Civil Procedure* § 2.1, at 55 (5th ed. 2001)) (internal quotation mark omitted). By contrast, a BIA regulation, at least one that does not purport to interpret a statute, is, in effect, the Attorney General *telling himself* what he may or may not do; presumably, he could simply change the rules if he were so inclined. That being the case, such regulations are more like a court's internal rules, such as our own standing orders, than *external* constraints that could properly be conceived of as jurisdictional.

Second, even if a regulation could be jurisdictional, the appeal-waiver rule would not so qualify. *See Irigoyen-Briones v. Holder*, 644 F.3d 943, 949 (9th Cir. 2011) (holding that the 30-day deadline to file a notice of appeal with the BIA was not jurisdictional). The Supreme Court has "urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011). "Among the types of rules that should not be described as jurisdictional are . . . 'claim-processing rules' . . . that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id*. at 1203. A requirement that parties must affirmatively reserve appeal at the hearing is a "quintessential claim-processing rule[]." *Id*.

conditions upon which an order of removal becomes final is "waiver of appeal by the respondent").**[3]**

In this case, the BIA concluded that it had no jurisdiction because Garcia validly waived appeal. "[T]he Immigration Judge's decision became administratively final upon the respondent's waiver of the right to appeal," the BIA held, and so the case was "not properly before" it. It cited section 1003.39, *Rodriguez-Diaz* and *Shih*.**[4]** The BIA reaffirmed its conclusion that it lacked jurisdiction in its decision denying the motion to reconsider.

The problem with this reasoning – aside from the *invalidity* of the waiver, for the reasons covered in the *per curiam* opinion – is that the regulation governing finality, 8 C.F.R. § 1003.39, on which the BIA relied, is flatly inconsistent with the INA, the governing statute.**[5]** 8 U.S.C.

---

**[3]** *Rodriguez-Diaz* and *Shih* relied principally on 8 C.F.R. § 3.39 (2000 and 1993, respectively). Current 8 C.F.R. § 1003.39 (2014) contains identical language.

**[4]** The BIA also cited the last sentence of 8 C.F.R. § 1003.3(a)(1), which provides that "[a] Notice of Appeal may not be filed by any party who has waived appeal pursuant to § 1003.39."

**[5]** We have jurisdiction to consider Garcia's argument on this point. Unlike in *Stone v. I.N.S.*, 514 U.S. 386 (1995), Garcia is not asking us to reverse or vacate the earlier decision, as to which he did not petition for review. Instead, he petitioned for review of, and directly challenges, only the denial of his motion to reconsider. The BIA's original jurisdictional holding was the necessary predicate to its opinion denying the motion to reconsider. "A motion to reconsider necessarily reaches the prior decision because it must specify the errors of fact or law in the prior Board decision." *Toufighi v. Mukasey*, 538 F.3d 988, 996 (9th Cir. 2008) (alteration and internal quotation marks omitted). "[A] petitioner who

§ 1101(a)(47)(B) provides that an "order of deportation" "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." *Id*. The definition also applies to an order of removal, such as the one at issue in this case. *See Ocampo v. Holder*, 629 F.3d 923, 927 (9th Cir. 2010) (citing *Singh v. Gonzales*, 499 F.3d 969, 979 (9th Cir. 2007)). So, according to the INA's terms, there are two events which can trigger the finality of a removal order – a BIA affirmance or the running of the appeal period. The waiver of the right to appeal is not mentioned as triggering finality.

*Ocampo* held 8 C.F.R. § 1241.1(f), which provides for the finality, under several circumstances, of an alternate removal order issued in connection with a grant of voluntary departure, to be inconsistent with section 1101(a)(47)(B) and

---

only seeks review of a BIA order on reconsideration foregoes any more favorable standard of review that might have applied had the petitioner sought review of the BIA's underlying decision on the merits," but "without some appraisal of the underlying merits, it would not be possible for an appellate court to evaluate whether the BIA abused its discretion in denying a motion to reconsider the merits." *Castro v. Attorney Gen. of U.S.*, 671 F.3d 356, 364–65 (3d Cir. 2012); *see also Narine v. Holder*, 559 F.3d 246, 251 (4th Cir. 2009); *Esenwah v. Ashcroft*, 378 F.3d 763, 764 (8th Cir. 2004). Moreover, although Garcia did not exhaust his challenge to the appeal-waiver regulation, "[b]ecause the BIA has no authority to declare a regulation invalid, 'the exhaustion doctrine does not bar review of a question concerning the validity of [a governing] regulation because of a conflict with a statute.'" *Coyt v. Holder*, 593 F.3d 902, 905 (9th Cir. 2010) (quoting *Espinoza-Gutierrez v. Smith*, 94 F.3d 1270, 1273–74 (9th Cir. 1996)).

therefore invalid.**[6]**   The statutory definition of finality, we said, was "clear and unambiguous that removal orders become final only in these two circumstances, so there [wa]s no need to resort to" a regulation providing a third alternative "for clarification." *Ocampo*, 629 F.3d at 927.   Applying the regulation's third alternative to trigger finality in the face of the statutory definition would, *Ocampo* held, violate the rule that "'[a] regulation may not serve to amend a statute, nor add to the statute something which is not there,'" by "effectively amending 8 U.S.C. § 1101(a)(47)(B) to afford an additional circumstance when removal orders become final that is not expressed in the statute." *Id.* (quoting *Cal. Cosmetology Coal. v. Riley*, 110 F.3d 1454, 1460 (9th Cir. 1997)).

As noted above, one of the other subsections of that same regulation, 8 C.F.R. § 1241.1(b), provides that a removal order becomes final "[u]pon waiver of appeal by the respondent."   *Id*.   The BIA in this case relied on the equivalent language of 8 C.F.R. § 1003.39, which provides that "the decision of the Immigration Judge becomes final upon waiver of appeal."   *Id*.   *Ocampo*'s reasoning applies equally to each of these provisions.  Each is inconsistent with the "clear and unambiguous" statutory definition of finality,

---

**[6]** 8 C.F.R. § 1241.1 provides, in relevant part: "An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . (f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. If the respondent has filed a timely appeal with the Board, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of the voluntary departure period granted or reinstated by the Board or the Attorney General."

*Ocampo*, 629 F.3d at 927,  as each adds a finality trigger that does not appear in the statute.

Congress, I recognize, did not specify in what "period" a noncitizen would be "permitted to seek review."  8 U.S.C. § 1101(a)(47)(B)(ii).     But the statutory provision unambiguously refers to *some* "period," that is, some time span with ascertainable starting and ending dates.  Consistent with the express congressional directive to "issue regulations with respect to . . . the *time period* for the filing of administrative appeals in deportation proceedings," Immigration Act of 1990, Pub. L. No. 101-649, § 545(d)(2), 104 Stat. 4978, 5066 (1990) (emphasis added), the regulations provide that the notice of appeal must be filed within 30 days from the issuance of the IJ's decision. 8 C.F.R. § 1003.38(b).  In other words, the "period in which the alien is permitted to seek review," 8 U.S.C. § 1101(a)(47)(B)(ii), is defined by the regulation: 30 days.  At the expiration of that period, not earlier, the order becomes final unless there has been an appeal.

DHS maintains before us that the term "is permitted" in the statute is sufficiently ambiguous to admit of the regulatory provision for finality upon waiver of appeal, or failure to reserve appeal, immediately after the IJ's decision is announced.  I discern no such ambiguity.  The statute requires that there be *some* period of time "permitted" in which a noncitizen may seek review before the BIA.  There is no reasonable construction of the statutory language allowing a noncitizen *no* time to seek review, but instead asking him to declare his intention regarding appeal immediately upon issuance of the IJ's opinion.

DHS also argues that 8 U.S.C. § 1101(a)(47) simply speaks to a different question than do the regulations – namely, finality for the purposes of judicial review, rather than finality for the purposes of appeal to the BIA. It points out that this statutory subsection was added as part of section 440 of the Antiterrorism and Effective Death Penalty Act of 1996. Section 440(a) precludes *judicial review* of "[a]ny final order of deportation" based on certain criminal offenses, and is immediately followed by section 440(b), which provides the definition of "final order of deportation" codified at 8 U.S.C. § 1101(a)(47). Pub. L. No. 104-32, 110 Stat. 1214. This statutory context, the government contends, indicates that Congress defined finality only for purposes of judicial review.

Contrary to DHS's inventive argument, however, we have applied the statutory definition of finality outside the context of judicial review. *See Ocampo*, 629 F.3d at 926–27; *Alali-Amin v. Mukasey*, 523 F.3d 1039, 1041–42 (9th Cir. 2008). *Ocampo*, for example, applied the definition to the question whether a motion to reopen was timely filed *with the BIA*; finality for the purposes of *judicial* review was not at issue in that case. *See Ocampo*, 629 F.3d at 926–27.

I recognize that holding the regulation at issue here invalid would have some troubling implications: A detained noncitizen who really does wish to waive appeal so he can be removed as soon as possible may instead be required to remain in detention for 30 days until the time to appeal has expired. *See* 8 U.S.C. § 1231(a)(1) (DHS shall remove a noncitizen who has been ordered removed with the "removal period," which begins, as relevant here, when "the order of removal becomes administratively final"); *but see* 8 C.F.R. § 241.7 (DHS may "permit an alien ordered removed . . . to

depart at his or her own expense to a destination of his or her own choice.").

But there are countervailing considerations as well. Most notably, the appeal waiver system in immigration court raises some troubling due process concerns. Noncitizens – often unrepresented – are asked during the course of the hearing to make a binding decision whether to pursue an appeal. This in-the-moment procedure is not at all how appeal waivers are obtained in other contexts. In federal criminal cases, for example, this court has permitted appeal waivers as part of plea bargains in reliance, in part, on the defendant having sufficient time to consider the matter. *See, e.g.*, *United States v. Morris*, 633 F.3d 885, 888–89 (9th Cir. 2011) (holding that the government's "take it or leave it plea offer," including a plea waiver, did not violate due process because the defendant had "several weeks to consider the offer," and this "timeframe [was] not problematic").

It may well be that due process requires time to think and consult with counsel before appeal rights can be validly waived. Indeed, the Supreme Court has indicated that such waivers must be "considered." *United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987). This case illustrates the importance of such time to think and consult. Garcia consistently sought to challenge the basis of his removal proceedings, asking for time to obtain an attorney, filing written pleadings including legal arguments that his conviction was not an aggravated felony, and, ultimately, filing an appeal. Although the record suggests that he understood the choice before him regarding the appeal, there is good reason to think that he made a spur-of-the-moment decision, in the heat of an intimidating hearing at which he was told he had no hope for relief. It is most likely, given his

actions before and after the hearing, that Garcia would not have made that decision had he been afforded time to consider the choice in light of the IJ's decision, and to consult counsel. Although, under our precedents, his waiver was not valid because of the IJ's improper advice regarding relief, even had the advice been correct, I would be troubled by the pressure brought to bear upon him, an unrepresented individual, to make such a weighty decision without even a night to sleep on it.

Furthermore, again unlike appeal waivers in plea bargains, it is not clear there is any *quid pro quo* for the type of waiver that was sought here. Unless the noncitizen is detained and seeking a swift removal, it is hard to see what he gets in return for his waiver. In federal criminal cases, by contrast, plea agreements, including appeal waivers, are "contractual in nature." *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc).

Accepting Garcia's argument that the regulations are inconsistent with the INA would avoid these constitutional concerns. The due process concerns might also be addressed by adding some protections to the waiver process, including *some* lapse of time from the IJ's decision, accompanied by advice to consult counsel before deciding whether to waive appeal. With such additions to the waiver process, it is possible that, as a prudential, discretionary matter, the BIA could decline to consider an appeal because of a waiver. But whether the BIA could, with such protections, be permitted to *choose* not to hear an appeal is a very different question from whether it is barred from doing so, as the BIA held in

this case.  *Cf. Singh v. Holder*, 771 F.3d 647, 653 (9th Cir. 2014).

In sum, I would hold, in the alternative, that, even if Garcia's waiver of appeal *were* otherwise valid, that waiver would not render Garcia's removal order final.  For that reason as well, the BIA abused its discretion in not reconsidering its holding that it lacked jurisdiction over this case.